### N. H. McCLENDON v. STATE.

No. A-3648.    Opinion Filed Sept. 6, 1921.
(200 Pac. 464.)

(Syllabus.)

1.  **Homicide—Assault With Intent to Kill—Evidence.** In a prosecution for assault with intent to kill, evidence considered and held sufficient to support the verdict and judgment of conviction.

2.  **Same—Self-Defense—Cross-Examination.** In a prosecution for shooting another with intent to kill, where the defendant testified in his own behalf and admitted the shooting, but claimed that he acted in self-defense, his cross-examination for the purpose of showing motive eliciting his statement that the complaining witness had procured his arrest a few days before, was proper.

3.  **Trial—Lecturing Jury.** The practice of calling in a jury and lecturing them upon the desirability of an agreement is not to be commended; but a statement by the trial judge to a jury that a disagreement would be expensive both to the state and the defendant was not erroneous, as attempting to induce an agreement on account of the expense of another trial.

Appeal from District Court, Johnston County; J. H. Linebaugh, Judge.

N. H. McClendon was convicted of assault with intent to kill, and appeals.    Affirmed.

Cornelius Hardy, for plaintiff in error.

S. P. Freeling, Atty. Gen., E. L. Fulton, Asst. Atty. Gen., for the State.

DOYLE, P. J.    The plaintiff in error was tried and convicted upon an information for an assault with intent to kill, by shooting one Everett Scott with a shotgun, and in accordance with the verdict of the jury, was sentenced to be imprisoned in the penitentiary for a period of one year and one day. From the judgment he appeals.

Upon arraignment the defendant filed the following motion:

"Comes now the defendant and moves the court to dismiss the information filed herein for the reason that a certified record of the proceeding, together with all the papers in the case, showing a preliminary examination has not been filed in this court as required by law, before the filing of the information herein."

The court overruled the motion, and this is the first error assigned.

The record shows the original complaint filed before the justice of the peace, and on the back of the complaint is indorsed:

"On this 2d day of March, 1918, the defendant in open court waived his preliminary examination—also the order that he be held to answer said complaint in the district court of Johnston county.   Bond fixed in the sum of one thousand dollars.   (Signed:)   W. E. Tarpley, Justice of the Peace."

Thus it appears that the motion to dismiss was properly overruled.

The complaining witness testified in substance as follows as to the facts of the difficulty:

"It was sunset when I started home from Ot. Smith's.  I had gone about 250 yards when the defendant hollered at me 'Hey Everett.'  I turned around and he fired two shots, ten shots penetrated my leg, and three penetrated my back.  I shot at him as quick as I could after he shot me; I fired five shots; my pistol was a little old 32."

Three or four witnesses testified that they heard the shooting, and that the first two shots seemed to be the report of a shotgun, and then three or four seemed to be the report of a pistol.  Two witnesses testified that they found gun wads on the roadside near a plum thicket.

As a witness in his own behalf, N. H. McClendon testified:

"I was going up to Mr. Miller's that evening and when I reached the road I heard Everett Scott say, 'Hold up there, McClendon, you damn son-of-a-bitch you.'  Scott commenced firing at me and I fired two shots at Scott with my shotgun.  I reloaded my gun and Scott asked me not to shoot him any more; I told him I would not; the  trail I was following led by the plum thicket where the shooting occurred."

On cross-examination the following questions were asked and answers given against the defendant's objections:

"About two or three days before you shot Mr. Scott, he had you arrested and caused you to be thrown in jail?

"He had me arrested, but I didn't stay in jail."

The defendant moved to strike out the question and answer and asked the court to instruct the jury not to consider the same, which motion was overruled and exception reserved.

The second assignment is based upon this ruling of the court, and it is contended that such cross-examination was improper and highly prejudicial to the defendant.   There was no error committed in the admission of this testimony.   The state had the right to offer any evidence tending to prove a motive

for the commission of the crime charged, and it was competent to show by cross-examination of the defendant, his ill feeling, hostility or malice towards the complaining witness, as tending to show motive for making the assault.

After the submission of the cause to the jury, and after they had been for sometime in their room, they returned into court and the foreman reported they had been unable to agree upon a verdict. However, some of the jurors stated that there was a probability of reaching an agreement while others stated they could not agree. The court returned the jury for further consideration. Thereupon the defendant moved the court to discharge the jury, when the following occurred:

The Court: "Defendant's motion is overruled. I said it would be expensive both to the state and the defendant; that the defendant and the state would both be put to expense and trouble."

It is now insisted that the court sought to coerce a verdict. The record shows that on the evening of the 28th day of May, 1919, the jury retired to consider of their verdict, and that the verdict was returned on the following day.

In the case of Wishard v. State, 5 Okla. Cr. 610, 115 Pac. 796, it is said:

"The length of time during which a jury should be required to consider a case is within the sound discretion of the trial court, and this court will not interfere with the exercise thereof unless manifestly abused. It is impossible to state any rule by which to determine what language by the court is sufficiently coercive to invalidate a verdict. This depends upon the circumstances of each case. No court would by mere physical exhaustion, force a verdict when satisfied that failure to agree resulted from conscientious difference of judgment as to the weight of the evidence. It is the duty of the court to detain the jury until satisfied that failure to agree springs from that cause, and that alone. It must then be left

19—C. R. 13

to the sound discretion of the trial judge to determine how long the jury shall be detained, and what, if anything, shall be said as to the probable length of the detention. Unless this judicial discretion is abused, the verdict should stand.''

In this case it is our opinion that the statement by the trial judge to the jury that a disagreement ''would be expensive both to the state and to the defendant'' was not erroneous as attempting to induce an agreement on account of the expense of another trial. However, we will take this occasion to say that the practice of calling in a jury and lecturing them upon the desirability of an agreement, is not to be commended.

None of the other questions raised by the assignments present any error, or call for any discusssion, other than to say the instructions given fully covered the law of the case, and the testimony on the part of the state was amply sufficient to sustain the verdict. The judgment of the lower court is therefore affirmed.

MATSON and BESSEY, JJ., concur.