LONNIE GLASGOW v. STATE.

No. A-10948.   Feb. 2, 1949.

(202 P. 2d 999.)

280

Funston Flanagan, of Walters, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, Lonnie Glasgow, was charged by information filed in the district court of Cotton county with the crime of assault with a dangerous weapon, allegedly committed upon one Henry Peel, was tried, convicted, and pursuant to the verdict of the jury, sentenced to serve a term of one year and one day in the State Penitentiary.

The evidence of the state showed that on the date of the alleged assault, March 31, 1947, the defendant and the complaining witness, Henry Peel, had been riding around in Peel's automobile to various towns.  Both of the parties had been drinking intoxicants.  Peel was afflicted with palsy but was able to drive his automobile. They drove to Lawton, to Temple and back to Walters. Peel had about $847 in his billfold which was known to defendant.  About 2:00 a.m., Peel drove defendant to the Emmitt Haynes' place where defendant intended to spend the night.  Haynes was the brother-in-law of defendant.  Instead of parking in front of the house, Peel, at the direction of defendant, drove around to the alley and parked near the garage.  Defendant said he had some whisky in the garage and that they would each take a drink before they parted.  Defendant went into the garage and stayed several minutes.  When he returned, he had something which was wrapped.  Defendant asked Peel to get out of the automobile and draw some water out of a hydrant.  When Peel got out of the automobile he was struck on the back of the head and knock-

ed to the ground. Defendant struck Peel several blows but most of them were glancing blows as Peel was struggling with defendant and attempting to hold a hammer which defendant had concealed in a shirt and which was being used by defendant as a weapon to strike Peel. During the struggle, Peel regained his feet and turned and ran to a neighbor's house and this neighbor took Peel to the sheriff's office and then to the hospital.

On cross-examination Peel testified that he was in the beer business at Walters and went to Lawton that morning with defendant to get a load of beer; that they returned to Peel's place of business and defendant helped him stack the beer. Peel was in the hospital about two days.

The officers testified about receiving a report from Peel concerning the difficulty with Glasgow. They stated that it was about 1:30 a.m., when they first saw Peel, and he was bloody, had a lot of cuts on his head, and a severe one on the base of his head. They arrested the defendant and then investigated the premises where the altercation was said to have occurred. They found lots of blood on the ground by the side of Peel's automobile. They found the hat which was being worn by Peel and there was a hole through the hat and some skin and hair and blood on the inside of the hat. Neither Peel nor defendant appeared to be drunk. Later they found an army shirt in the garage with blood on it and a shop hammer. The shop hammer had some stains with appeared to be blood stains and was taken to the State Chemist for examination.

Taylor Rogers, Chief Chemist for the State Health Department, testified that he made an examination of the shop hammer brought to him by the sheriff and that

his examination disclosed that the hammer had human blood stains on it. The hammer was described as a two pound shop hammer.

Doctor C. F. Stauber testified that he treated Homer Peel at his hospital. Peel was suffering from shock and had lacerations and contusions on his scalp and on the right elbow. The Doctor described one laceration as being circular, which in his opinion was caused by some type of instrument that was circular in nature.

Defendant testified in his own behalf that his home was in Temple. His testimony concerning the trips made with Peel was substantially the same as that related by Peel. He further testified that during the evening Peel became intoxicated. He testified that when they arrived at defendant's brother-in-law's house where defendant intended to spend the night, that he and Peel had an argument in which Peel wanted defendant to start selling whisky with him and that defendant refused; that Peel then insisted that defendant spend the night with him and made some indecent proposals to him; that when this was done, defendant started to get out of the car and was struck on the nose and mouth by Peel; that a general fight started during which they rolled on the ground up to the garage entrance.

Defendant then testified concerning the shop hammer as follows:

"Well, when I found it, I didn't know whether it was a hammer or hatchet or what it was. It was dark and you couldn't see nothing and he had me kinda clinched and I grabbed something and I just kept pounding him like that (Indicating) with the hammer. I tried to get loose from him, and how many times I hit him, I don't know, I couldn't tell, but I was trying to get loose, get away."

Doctor Frank Stickney, an osteopathic physician, testified that on April 5, 1947, he had occasion to treat the defendant; that defendant had a laceration on the inside of the lower lip and complained of a back injury; that he taped up defendant's back; that defendant had a swelling of the muscles of the middle of the back on each side of the spinal column; that he took an X-ray picture of the injury but the X-ray did not disclose any bone involvement.

W. H. Glasgow, father of defendant, testified that on the night the altercation occurred, Peel came by his home in Temple and was drunk and cursing.

Other witnesses testified who saw Henry Peel the night in question, and they stated that in their opinion Peel was in an intoxicated condition.

The first assignment of error is that the evidence is insufficient to sustain the conviction. The evidence of the state, if believed by the jury, was sufficient to show an unprovoked attack upon the complaining witness, and is sufficient to sustain the verdict of the jury.

The next assignment of error is that the trial court erred in overruling the motion of defendant for a mistrial because of the failure of the county attorney in his opening statement to the jury to state the plea of the defendant.

The record discloses that the county attorney read the information to the jury and then reviewed briefly the evidence which the state intended to produce to sustain the allegations of the information. He did not state to the jury that the defendant had entered a plea of not guilty to the information.

By statute it is provided:

"The jury having been impaneled and sworn, the trial must proceed in the following order:

"1. If the indictment or information is for a felony, the clerk or county attorney must read it, and state the plea of the defendant to the jury. In other cases this formality may be dispensed with. * * *" Title 22 O.S. 1941 § 831.

Immediately after the county attorney had finished with his opening statement, counsel for defendant arose and moved the court to quash the information for the reason that the county attorney in his opening statement had failed to comply with the statutes, which motion was overruled with an exception allowed to defendant. Counsel for defendant then made his opening statement to the jury and at the very beginning he stated:

"The defendant has plead not guilty to the charge. The county attorney neglected to tell you that. It was his duty to tell you that under the law. He failed to do it."

In the instruction to the jury, the trial court properly stated the allegations of the information and instructed the jury that the defendant had entered a plea of not guilty to the charge set out in the information; that defendant was presumed to be innocent and the burden of proof was upon the state to introduce evidence to prove the guilt of the defendant beyond a reasonable doubt. Under such circumstances, it is our conclusion that the failure of the county attorney to state the plea of the defendant to the jury was error, but was not reversible error for the reason that the defendant suffered no injury by reason of this failure of the county attorney.

In Brannon v. State, 39 Okla. Cr. 207, 264 P. 835, it is held:

"In the trial of a criminal case after the jury is impaneled and sworn, the clerk or county attorney must read the information and state the plea of defendant. Where the plea of defendant is not stated but the case is tried upon his plea of not guilty, the failure to state the plea is error without injury and presents no ground for reversal."

It is further argued that the trial court erred in permitting testimony that the witness, Henry Peel, had $847 in currency on his person at the time of the alleged crime, as there was no connection between said sum of money and the alleged assault. We think the testimony concerning this sum of money being on the person of the complaining witness was competent evidence for whatever weight the jury might see fit to give it as indicating a possible motive for the alleged assault made by the defendant. The motive with which a crime is committed is always material and a proper subject of inquiry. Hall v. State, 37 Okla. Cr. 4, 255 P. 716; Kiker v. State, 46 Okla. Cr. 346, 285 P. 987; McClendon v. State, 19 Okla. Cr. 382, 200 P. 464.

It is contended that the trial court erred in overruling counsel's motion for a mistrial because of a statement made by the county attorney while he was on the witness stand after being called as a witness by counsel for the defendant.

The record discloses that the county attorney was asked by counsel for the defendant if he made a trip to Temple to the beer parlor where the defendant was employed about two months before the trial to try to force the defendant to close his bar on Sunday. The county attorney admitted that he and the sheriff had gone to Temple and talked to the defendant, had told him about some complaints they had received and asked him to close

his beer place on Sunday, and defendant promised that he would. Counsel for defendant then asked: "Had you talked with him somewhere before the day you were down there?" To which the county attorney replied:

"No sir; no, sir; in fact, I don't recall having seen him. I didn't know he was down in that neighborhood at all. I had a 'phone call once before, that time he got away with—when that lady at Waurika called me to come down, when he had pawned a watch of hers and wouldn't give it back."

The record then discloses the following proceedings:

"Mr. Flanagan: Now just a minute. We object to that. Now, Your Honor, we move the court that a mistrial be granted and that this jury be discharged and this case remain held up for further proceedings. The Court: Overruled. The jury will be admonished not to consider the question and the answer last given by the county attorney. By Mr. Flanagan: We don't—I don't mean any disrespect for the court, but I would like to insist on that just a little. I don't want to go into the right of the county attorney here, a slip of the tongue on his part. However, it is highly prejudicial to the defendant and it is prohibited by the law and against the statutes, and I honestly believe it is error. The Court: Well, I think this, that the jury understands that the answer was improper, and it might have been provoked in a measure by the attorney here for the defendant, and I think the jury understands, at least, they should understand that the answer has no bearing on this lawsuit one way or the other, and you should not consider the answer against this defendant. With that admonition, you may proceed. You will have your exception, however, to the ruling of the court."

We shall consider this assignment of error together with the assignment of error that the county attorney was guilty of making prejudicial and improper remarks in his argument to the jury and that there was further

error because of a statement made by the trial court in connection with an objection interposed by counsel for defendant during the closing argument of the county attorney.

The record discloses that the arguments of the county attorney and counsel for the defendant were taken by the court reporter and transcribed as a part of the record. Each of the counsel stated that it was their first case to ever try to a jury. Each of the counsel made an excellent argument and considering that it was their first appearance before a jury, each of them did a good job. However, each of these young men was eager to win and each of them at times made remarks which were not relevant to the issues. There was some testifying by each of the attorneys in their closing arguments which is not unusual, especially for attorneys engaged in the trial of their first case. During the argument of counsel for defendant, the county attorney interposed an objection or two to the argument and then when the closing argument of the county attorney commenced, counsel for the defendant commenced to make a series of objections to what he evidently thought was improper argument on the part of the county attorney. After some of these objections had been made and ruled upon, the counsel for defendant made an objection to a certain argument being made by the county attorney on the ground that it was outside of the record to which the court made this remark:

"I say, the jury knows, certainly should know better than the court what the evidence in the case is. I assume that they will hear what the county attorney has to say, and I assume further if they get out of line, that they will not hold the defendant responsible for it, and for that reason I suggest that you do not make any other

objections, unless clearly out of the record and unless highly prejudicial and against the interest of the defendant."

It is contended by the defendant that this remark of the trial court was improper and prejudicial to the defendant.

In the closing argument of the county attorney, he stated among other things:

"I don't know what your verdict will be. I believe it is going to be a verdict of guilty, but in the event you turn this man loose, the sheriff is anxious to know that, because the next time somebody calls him out of bed the next time because somebody is hit with a dangerous instrument, he can hang up the receiver and go to bed, because he don't need to. I believe it beyond a reasonable doubt that this man assaulted him with that two pound sledge hammer and hit him in the back of the head.

"We want to know what you good men of this county think about it, how you want the law enforced. It is up to you fellows. If you believe a man has got a right to go out with a hammer and beat another over the head with it, that is your privilege. You are the makers of the law, you are the sole judges. We bring them up here and just give everything we had. We have put everything in this case we have got, and we believe the man is guilty and I believe he should go to the penitentiary, and I believe you fellows are honest, so whether I should or not, we have done what we think is right under our oaths, having made a presentation of our case, and I leave it up to you fellows."

It has been held that it is improper for the prosecuting attorney to state his personal opinion as to the defendant's guilt or state facts not proved by evidence, or otherwise get before the jury that which amounts to his own testimony. Cline v. State, 57 Okla. Cr. 206, 47 P. 2d 191.

In considering these last two assignments of error together, we are giving the defendant the benefit of any doubt there might be as to whether such conduct was in the least prejudicial to his rights. While the actions and statements of counsel for defendant might be said to have induced some of the statements which were made by the county attorney and also the admonition given by the court to the jury hereinabove quoted, we can see that there is a possibility that such conduct might have affected the jury. We do not see how it can reasonably be said that these acts caused the jury to return a verdict of guilty. The defendant himself states that he struck this palsied individual with a shop hammer. His explanation for his conduct is weak and apparently was not believed at all by the jury, nor is it believed by this court. The blows which were struck were evidently glancing blows because if the complaining witness had been struck by the direct force of a two pound hammer his skull would evidently have been fractured and he easily could have been killed. The only thing the statements complained of might have done was to have caused the jury to give defendant more punishment than they might have otherwise done if the statements complained of had been omitted.

In Hall v. State, 68 Okla. Cr. 367, 99 P. 2d 163, this Court held:

"Where the guilt of the defendant is clear, and there is no reason to believe that the jury could have arrived at any other verdict than guilty, this court will not reverse the case because of the improper conduct of the county attorney, but in the exercise of its discretion will modify the penalty imposed and affirm the judgment of the lower court."

Under all the circumstances as disclosed by this record, we have come to the conclusion that justice will be served by modifying the sentence imposed against the

defendant for a term of one year and one day of imprisonment in the State Penitentiary to a term of six months imprisonment in the State Penitentiary.

It is therefore ordered that the judgment and sentence of the district court of Cotton county be modified by reducing the sentence from one year and one day in the State Penitentiary to a sentence of six months in the State Penitentiary, and the judgment and sentence as thus modified is affirmed.

BAREFOOT and BRETT, JJ., concur.