Delbert Bill SPOMER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13475.

Court of Criminal Appeals of Oklahoma.

Sept. 30, 1964.

---◆---

Paul R. Haunstein, Enid, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Delbert Bill Spomer, hereinafter referred to as the defendant, was charged by Information in the District Court of Major County with the crime of Wife and Child Abandonment and Failure to Support Minor Children. He was tried before a jury, found guilty, and sentenced to Five Years in the Oklahoma State Penitentiary.

Defendant lodged his appeal in this Court within the time prescribed by law asserting numerous assignments of error. The record reflects that a most unusual occurrence took place during the testimony of the court clerk, Pauline Sutton, who had been called to identify certain court records of divorce proceedings between defendant and the complaining witness. The record reveals the following transpired during examination by the County Attorney:

"Q. Now what—well, I'm going to ask you to be a little bit of a lawyer. here.

"THE COURT: She's a good lawyer. She advises me all the time.

"Q. Me, too. As a matter of fact, she keeps me straight. What would occur if the father does not pay the child support?

"A. Well, it depends upon the—

"Q. —What could happen?

"A. He could be cited for contempt of court.

"Q. Was that done in this divorce proceeding, the case of Spomer v. Spomer?

"A. There was a citation.

"Q. Was he cited?

"A. Let me see the case. (The attorney for defendant hands the files insaid case, States Exhibit A, to the witness.) He was cited, yes.

"Q. What does it say?

"A. Do you want me to read the order?

"Q. Yes.

"A. 'Now on this 30th day of July, 1963, this matter coming on to be heard, upon the verified application of the plaintiff, for an order commanding Delbert Spomer to appear before this Court and show cause why he should not be punished as for contempt, by reason of his wilful disobedience of the order and judgment of this court, entered on the 15th day of August, 1962, and the Court, being fully advised upon the showing made, finds that said order should issue.

It is therefore ordered by the court that said defendant appear before this court on the 27th day of August, 1963, at 10:00 o'clock A.M., and show cause why he should not be punished for contempt of court, and that the sheriff of Major County, Oklahoma, serve a citation accordingly on said defendant.

/s/ F.B.H. Spellman
District Judge'

"Q. Now has he been served with that citation?

"A. The sheriff's return says, 'Received this Citation for Contempt and served the same on Delbert Spomer, by delivering to said Delbert Spomer personally, in said County a true and certified copy of the above Citation for Contempt with all the endorsements thereon.. Returned this 30th day of August, 1963. /s/ Leslie Davison, Sheriff, Major County.'

"Q. Is it possible that the father, the defendant in this case, could be jailed for failing to pay this child support?

"A. That's up to the judge

"Q. But I ask you is it possible?

"A. It is possible.

"Q. It is possible he could be thrown into jail for failing to make these child support payments?

"A. He is usually kept there until he pays.

"Q. In other words, he will be jailed or the court will allow her some remedy until he decides to make these child support payments? Is that correct?

"A. If the court so rules.

"Q. I mean the court has that power?

"A. Thats right.

"Q. So really whether or not the defendant is convicted of this crime really has nothing to do with whether he is going to make child support payments or not, does it? I mean we have got him under a civil case.

"A. I couldn't answer that.

"Mr. GLEASON: Your Honor, in view of the fact the defendant hasn't any bond up in this civil case, I object to this statement, 'We have got him.' He hasn't got anything.

"THE COURT: She said she couldnt answer it anyway.

"Q. What I'm trying to establish is whether or not Mrs. Spomer has some remedy other than this criminal action. The County Attorney has put this divorce file into evidence and I think you

have answered the question that I wanted you to answer.

"THE COURT: Well, I think your question is whether this matter is still pending.

"Q. Yes. I mean this is a civil matter against the defendant to make him pay child support.

"THE COURT: I think we all understand that."

redirect examination

"(By Mr. Gleason)

"Q. She advised him. Now I need some advice.

"THE COURT: Send them a bill.

"Q. This case was filed and there was a citation. Now if the defendant lives in Texas, can you send a citation down to Texas to be served, Mrs. Sutton? I'm Talking about a citation.

"A. No, sir.

"Q. So if he is in Texas, a citation is not going to be any good because there is no way of going down there and bringing him back. Right?

"A. That's right.

■ This Court fails to see the propriety or reason for permitting a layman to expound to the jury upon the law as it pertains to citations for Contempt or any phase of Criminal Jurisprudence.

■ The trial judge recognized the extent the witness went to in dissertation of the law when he said to the witness, "Send them a bill". Nevertheless, there is one man in the trial of any criminal case charged with the responsibility of advising the jury on matters of law, and that is the trial judge. For anyone else to do so is improper and invades the province of the judge. This practice is most improper and should be condemned.

Defendant further complains that the trial judge made prejudicial and improper remarks in his lecture to the jury after they had returned from deliberation and stated

they were unable to reach a verdict. The Foreman of the jury advised the trial court that the jury had been unable to arrive at a unanimous verdict after two and a half hours of deliberation. The judge proceeded to deliver to the jury the following dissertation consisting of approximately 2000 words:

"THE COURT: The word was communicated to me by your bailiff possibly 30 minutes ago that you were having some difficulty getting together and there was some probability you might not be able to get together. Are you the foreman?

"JUROR: Yes, sir. We still have been unable to arrive at a unanimous verdict.

"THE COURT: Well, of course the law requires the verdict in this case to be unanimous. How many ballots have you taken?

"JUROR: We have taken three ballots.

"THE COURT: Has there been any change at all from the first to the last?

"JUROR: Well, from the first there has been, but not not the last two.

"THE COURT: The last two have been the same?

"JUROR: Yes, sir.

"THE COURT: Don't tell me how you stand. Don't tell me how many are for guilty and how many are for not guilty, but just tell me, on your first ballot how you stood numerically.

"JUROR: The first ballot was 9 and 3.

"THE COURT: What was it on the last ballot?

"A. 1 and 11

"THE COURT: Well, I would say you had made a lot of progress if just one juror is all you have to talk into going with the other

11, then you have a verdict. It looks to me like you about have it made now. You may be seated, if you will, Mr. Cornelsen. In your opinion, about how long do you think it will take?

"JUROR: I don't think we will ever reach a unanimous decision, sir.

"THE COURT: Well, 'ever' is an awful long time.

"JUROR: It most certainly is.

"THE COURT: You have been there now a little better than two and a half hours.

"MR. GLEASON: Your Honor, the state would suggest that you send them out to supper, and that changes a lot of things, you know—a good supper.

THE COURT: Well, I don't know. Maybe they're not hungry. What I had in mind, lady and gentlemen, was this: If you didn't arrive at a verdict say by 6:00 o'clock, or if you would like to get out now and walk around some—I have already done that. I have walked all over this part of town while you have been in there. And then go into the hotel or wherever the bailiff suggests, and then have your evening meal and come back and work —I certainly don't want a jury to disagree in this case. Would there be any objection to your working say another 20 minutes or would you rather go now? How many of you would like to go back and work say about 20 minutes more and try to arrive at a verdict? Well, that doesn't seem to be very popular. Well, my suggestion would be then that you get out and walk around and come back and that will mean we will have a night session here. Before we leave though, perhaps there are some problems bothering you people that the court might be able to help you on. Is there any question about some of the instructions or are there any questions that you have?

I won't guarantee that I can answer them, but I have got a couple of good lawyers here and they will probably be able to tell you the answer. We found out this afternoon or this morning that Mrs. Sutton here is an expert on the law. Is there any problem that you have that you would like to inquire about? May I have the papers you have? Would you get them and hand them here to me? (The bailiff gets the instructions and forms of verdict and hands them to the court.) Ladies and gentlemen, the court is going to make a statement which I feel that I should have made this morning and didn't, or this afternoon, with reference to this case and another case that is pending in this court, inasmuch as indirectly the court is involved in what I'm going to tell you about. Under the rules of this court, prior to the time a case is set for trial before a jury in this county in the District Court, that case must go through the divorce case—was on the pretrial assignment for October 2nd for pretrial and for an assignment. I might say that Mr. Spomer's present attorney, the court-appointed attorney—and he was only appointed last Friday—was not the attorney of record for Mr. Spomer at that time. As I told you, the attorney of record was Raymond North, a very able attorney from Enid. At that time this case was called since it was on the assignment first. Now although this was Judge Spellman's case, or had it been tried to a court, Judge Spellman would have been the judge who tried it—we have two judges here in this District Court, one very good judge and then you also have me. Anyway, Judge Spellman did not try this case when it came up before him because there was a demand for—I wasn't present, but I was informed, and the records so indicate, that there was a demand for a jury trial. Now a jury trial in a civil case, as I told you this morning, is tried considerably

different from what it is in a criminal action. It only requires a concurrence of three fourths of the jurors, 9 of them. The burden of proof in any civil case is only by a preponderance of the evidence and not beyond a reasonable doubt, whereas in a criminal case, as I told you, and you found out in this case, is beyond a reasonable doubt and requires the full concurrence of the jurors. I don't know whether Mr. Spomer was here at the time or not. I rather think he was not. You were not here at the pretrial, were you.

"MR. SPOMER: No, sir.

"THE COURT: He was just represented by Mr. North. At that time, Mr. North, speaking on behalf of Mr. Spomer, objected to the trial of the civil case at this time, at this session of court, and said that he thought the criminal case should be tried first and that is the case that he wanted tried first. The question was discussed then by the attorneys. I'm talking about now the attorney's who represented Mrs. Spomer, which I believe was Mr. Joe Houk, and Mr. North, who represented Mr. Spomer at the time, and also by the county attorney, who represented the state, as to whether or not we would be able to try both these cases at this term of court. I instructed—I didn't instruct it—I informed the attorneys that in my opinion it would be impossible. In the first place, I didn't think we would be able to get enough jurors to try both of these cases in this term of court. I also told the attorneys present that I didn't think that I had sufficient time to try it; that I was working under a very tight schedule with a number of jury cases to be tried in Garfield County, where I live, and in Kingfisher County, to the south, which is now running pretty close to Garfield County in the number of cases down there, on account of that tremendous oil field that they have in that county, and I felt like I wouldn't be able to give the time to try

both of those cases. I did tell the attorneys though at that time that I would permit the defendant to make his selection as to which case he wanted tried; whether the civil case or the criminal case. I informed him that although it was Judge Spellman's case, I was not disqualified to try the civil case to a jury on the question of whether or not Mr. Spomer had been guilty of a wilful violation of an order of the court, which would be an indirect contempt of court. Mr. North, speaking on behalf of Mr. Spomer, elected to have this case tried first. As I said, I gave him that privilege. Now I will allow the defendant an exception to what I have stated, but the question has been kicked around here and I thought about it a good deal today, why we were trying one and why we were not trying the other, and frankly, I make this statement to you for only one purpose, and that is to clear my own skirts. I was here, ready, willing and, to the best of my ability, able to try whatever litigation that was here. It was self evident that we were going to try one or both of these cases. I felt it was impossible, and I still feel it is impossible, to try both of them to the same jury panel. We don't have a large number of jurors, and to call in the other jurors and to select a jury in the other case, say if we tried the civil case and then tried this case today, we would have just had to call in more jurors, and I just didn't have time to do that. I make that explanation, as I say, solely for the purpose of letting you know what the court did on that particular case, and, as I say, I will allow both the state and the defendant an exception to the remarks I have made. Now I want you to understand this is no reflection on the state; it is no reflection on Mr. Spomer. Mr. Spomer, in my opinion, had the right to have either case tried first. At least, I gave him that right—gave it to his attorney, and this is the case his

attorney said he would like to have tried first, and from that time to this, there has been no request made to the court that the other case—that the matter be shifted around and the other case tried first. I would have been glad to have tried one just as quickly as the other. I have tried probably about the same number of cases like this to a jury—the contempt cases and also the criminal cases, so I think I am equally experienced in trying either or both of them. I just thought you might want to know why the court was trying this case instead of the other case. That may not be of any concern to you, and probably isn't, but I make that explanation, as I say, for my own benefit, not that I'm expecting anybody to jump onto me or anything about it. The two cases have been—first the states witnesses were talking all morning about this divorce case and the citation for contempt before Judge Spellman in that case, and then this afternoon the defendant's witnesses were talking about it. We are trying this one here today because that is what I thought they wanted to try. That's what they said.

"MR. CURTIS: You Honor, may I make a motion at this point?

"THE COURT: Yes.

"MR. CURTIS: I would like to make a motion that the jury be discharged and the defendant be acquitted of this crime for the reason that the jury is unable to bring in a unanimous decision. It is my feeling and I think the Instructions bear me out on this, that there has to be a unanimous decision. The foreman of the jury has informed us that in all probability there will never be a unanimous verdict, and I certainly want my view stated here that the jury is not to be—not to think that they must come in with a unanimous decision before they can go home, and I, at this time, would like to make an oral motion to the court that this jury be discharged and that the defendant, Mr. Spomer, be adjudged not guilty of the crime as charged, on the basis that the jury cannot render a unanimous decision.

"THE COURT: of course that wouldn't be a verdict of acquittal. It would be a mistrial and the case would have to be tried over again or some disposition made of it. The motion will be denied. Of course, Mr. Curtis, I don't have any intention of making myself obnoxious to the jury. I have had very few of what is commonly referred to as hung juries. I have had a few, but not many, but, after all, this jury has only been out two and a half hours. I have had murder cases where they have been out two days and came in with a verdict. On a couple of murder cases, I have stayed up all night with them. Mr. Cornelsen, the foreman, told me they would never be able to arrive at a verdict. Now he is going to get mad at me when I say this, but I didn't believe him when he said that. It is 11 to 1 now. If it was 6 to 6, I would have a lot of misgivings about it, but it costs the county quite a lot of money to have a jury session. Of course, as I said, I don't want to be put in the position—I am not going to make them sleep on the floor tonight or anything like that to get a verdict, but I think they are just getting warmed up here on their deliberations. Anyway, I'm in a very enviable position. I don't have a thing in the world to do but come back tomorrow and try another case. Now if I had another jury tomorrow, I would just be sitting on needles and pins, but the case tomorrow, I'm the jury. Now, ladies and gentlemen, it is almost 6:00 o'clock. We are going to stand recessed until you go down and have your evening meal, then come back and go into the jury room, and the instructions here and this exhibit and the forms of verdict will be here when you get back. Where do you want to take them? The hotel? Now,

ladies and gentlemen, during this intermission you will not talk about the case. Don't permit anybody to talk to you. Don't form or express an opinion. You ought to get through down there by 7:30. That's an hour and a half. That will give you time to walk around a little bit and eat your meal and come back here. I think the world will look a lot more rosy here from the standpoint of getting together maybe after you have eaten. I hope it is. I hope you arrive at a verdict. As I say, I am farther away from home than any of you and I'm pretty willing to stay. If it were 6 and 6 or even 7 and 5, I'd feel a lot more pessimistic about it than I do this way. I don't feel like it is an impossible thing at all. I have had them tell me that before and then come in with a verdict. All right, ladies and gentlemen.

JUROR: Are we going to get to go home any time tonight?

"THE COURT: I started to say that is the $64.00 question. Yes, you will be permitted to go home tonight. You boys call your wives and if any of you need an alibi—anything to tell your wives, I'll back it up.

(The jury then leaves for supper at the hour of 5:55 P.M. in the custody of the bailiff and the court clerk, and then returns to the jury room for further deliberation. At the hour of 8:20 P.M. of said day, the jury returns into court with a verdict.)"

▮▮▮▮ The practice of calling in a jury and lecturing them upon the desirability of them reaching an agreement has been frowned upon and condemned by this Court in numerous cases since Statehood. See, McClendon v. State, 19 Okl.Cr. 382, 200 P. 464; Bailey v. State, 57 Okl.Cr. 152, 47 P.2d 219; Highfill v. State, 26 Okl.Cr. 420, 244 P. 729.

In the instant case, we feel that many of the remarks of the trial judge were improper and may have had a coercion effect upon the jury. It is by far the better practice for the trial judge to lecture a jury as little as possible and be most cautious in his remarks for fear he may say something that will prejudice the rights of the defendant.

In the remarks of the trial judge, which were very lengthy, much discussion was had relative to another charge and why it was not tried first. The Court fails to see why the information was tendered to the jury. It had no place in the trial of the case at bar. Many remarks were made that appear of a coercion nature that would have been better unsaid.

The jury is prone to lend much credence to remarks of a trial judge and his position merits such respect a juror can be easily influenced by a remark so made. And where such improper remarks are made, if there is a doubt whether defendant was prejudiced thereby, that doubt should be resolved in favor of the defendant. We agree that every improper remark of a trial court will not justify reversal of a criminal case. If the remarks are such that might reasonably influence the jury against the defendant, a new trial should be granted.

We feel that justice would be better served if defendant were given a new trial and it is so ordered.

JOHNSON, P. J., and BUSSEY, J., concur.