## BUD CHILDS v. STATE.

No. A-2622.    Opinion Filed June 2, 1917.

(165 Pac. 622.)

1.  **TRIAL—Argument of Prosecuting Attorney—New Trial.** A prosecuting attorney should confine his argument before the jury to a fair discussion of the issues in the case, and improper remarks objected to at the time will be considered and construed in reference to the evidence. If it appears that the improper argument may have determined the verdict, a new trial should be granted.

2.  **SAME.** In his argument to the jury, the assistant county attorney said, "The county attorney of this county knew this defendant was guilty before he filed this information, or this case would never have been brought." Evidence considered, and **held,** that such statement was prejudicial to the substantial rights of the defendant, for which a new trial should be granted.

*Appeal from County Court, Logan County;*
*John D. Chappelle, Judge.*

Bud Childs was convicted of a violation of the prohibitory law, and appeals. Reversed.

*John A. Remy* and *James Hepburn,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The information charged that in the county of Logan, on the 9th day of October, 1915, Bud Childs did then and there unlawfully have in his possession "42 quarters of beer, 1½ quarts of whisky, and 1 quart of gin, with the intent then and there to barter, sell, give away, and furnish said intoxicating liquors." Upon his trial the jury returned a verdict of guilty, and he was sentenced to pay a fine of $100 and be confined for 30 days in the county jail. To reverse the judgment an appeal by case-made was duly perfected.

The plaintiff in error, a negro, with his wife and five or six children, lived on a farm owned by him in the southern part of Logan county.

The testimony of the sheriff and one of his deputies shows that on the day alleged they went to his farm, and there in executing a search warrant found at his home intoxicating liquors as described in the information.

Arthur McKee testified that he went to the defendant's place to buy some cows of him, could not make a deal, and asked him if he had anything to drink, and defendant said he had a well of water, and witness said he wanted something stronger, and the defendant said he would try to find something, and he put a bottle in his automobile, for which he gave him $1.50. Witness was then asked to tell the jury what was it he bought and paid for. He answered:

"I don't know exactly what it was. I lost it before I got home. When I went to get it from the back of the car, it was gone. I don't know whether I lost it or not. It was not in the car when I went to get it, and I did not taste it. I had been drinking some before I went there."

Sam Rooker testified that he went with Arthur McKee to the defendant's place; did not get any whisky or beer himself, but saw McKee come from the house with a whisky bottle in his hand; did not see McKee with a bottle prior to that time, and did not think McKee was drinking that day; that he was at the defendant's place another time and asked the defendant if he had anything cold to drink, and the defendant gave him a cold bottle, for which he paid 20 cents. The attorney for the state then asked him:

"Q. I will ask you if he did not say he had some cold beer? A. Don't remember. Q. I will ask you if you didn't ask him if he had some cold beer? (Objection by the court overruled.) A. Don't remember whether I asked him that or not. Q. To refresh your recollection again, I will ask you if, when you were called before the county attorney, you said in that examination you testified that you asked for a cold bottle of beer, didn't you? (The defendant's objections overruled. Exception. No answer.) Q. Tell the jury whether it was beer or not? A. It tasted like beer."

Cecil Harpster testified that he was at the defendant's place some time in the summer and bought two or three cold bottles and drank them, for which he paid 20 cents apiece; that he was unable to say what the stuff was. The assistant county attorney asked the following question:

"Q. Tell the jury whether it was beer or not? (Defendant objects to the question.) By the Court: Objection overruled. He can tell what it was. (Exception re-

served.)    A.    I called for a .cold drink.    Asst. County
Attorney:    I know that the witness knows what he got
there, and I want the court to compel the witness to
purge himself of contempt of court.    By Mr. Remy:    To
the statement of the assistant county attorney defendant
objects, on the ground that said statement was made for
the purpose of prejudicing the minds of the jurors against
the defendant.    By the Court:    Objection overruled.    (De-
fendant excepts.)    By the Court:    Gentlemen of the jury,
no evidence of what somebody said or done is to be con-
sidered by you in the trial of this case.    Consider just
what the witness said; that is what you are to consider,
not the remarks of counsel."

Two or three other witnesses testified that they had
bought something that tasted like beer at the defendant's
place, but refused to definitely fix the time.

As a witness in his own behalf, the defendant testi-
fied that he lived on his own farm consisting of 240 acres;
that he had the liquor in question for his own personal
use; that he had received four or five shipments of liquor
in as many years for his own personal use, and the liquor
in question was a part of one or two shipments that he
had received in the last six months.    He denied that he
had ever sold any intoxicating liquor to any person.

James Stewart testified that he lived on the defend-
ant's place, in a seperate house for more than a year last
past, and never knew of any person going there to buy
liquor of h'm.

Will Carter testified that he had been working for the
defendant for about eight months, and never knew of him
selling or furnishing liquor to any one.

Three or four farmer neighbors testified that they
had known the defendant for from seven to 15 years.

They qualified as character witnesses, and testified that the defendant's reputation for truth and veracity and as to being an honest, law-abiding citizen was good.

Two bankers and two merchants of Guthrie testified that they had known the defendant for several years and knew his general reputation for truth and veracity and as being an honest, law-abiding citizen, and that such reputation was good.

Of the various errors assigned, we deem it only necessary to consider those relating to the charge of misconduct on the part of the assistant county attorney. The record discloses that the assistant county attorney in his argument to the jury made the following statement:

"The county attorney of this county knew this defendant was guilty before he filed this information, or this case would never have been brought."

To which statement the defendant objected and excepted at the time on the ground and for the reason that said statement was prejudicial and made for the purpose of prejudicing the minds of the jury against the defendant. The court at the time instructed the jury not to consider anything outside the record in the case.

Considering the fact that there is a direct conflict in the evidence as to the guilt of the defendant, we think that the statement complained of could not be otherwise than prejudicial to the defendant.

It would seem from the record that the witnesses for the state had testified before a court of inquiry conducted by the county attorney, who did not personally appear in the trial of the cause. The statement was, under the circumstances, highly improper and well calculated to bolster up the unsatisfactory testimony of the

witnesses for the state. If, as his assistant stated, the county attorney knew that the defendant was guilty, he should have been called as a witness so that the defendant could have the benefit of confrontation and cross-examination. A prosecuting attorney should confine his argument before the jury to a fair discussion of the issues in the case, and improper remarks objected to at the time will be considered and construed in reference to the evidence. If it appears that the improper argument may have determined the verdict, a new trial should be granted. *Watson v. State,* 7 Okla. Cr. 590, 124 Pac. 1101; *Mulkey v. State,* 5 Okla. Cr. 75, 113 Pac. 533.

There were other improper statements made by the assistant county attorney during the progress of the trial which we think tended to deprive the defendant of a fair and impartial trial upon the law and the evidence in the case.

For the reasons indicated, the judgment is reversed, and the cause remanded for a new trial.

ARMSTRONG and MATSON, JJ., concur.