BEAMIS CLINE et al. v. STATE.

No. A-8858. June 28, 1935.

(47 Pac. [2d] 191.)

Williams, Cowan & Benedum, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (Paul W. Updegraff, of counsel), for the State.

DOYLE, J. The plaintiffs, Beamis Cline and Mary Cline, were jointly tried and convicted in the county court of Cleveland county upon an information charging that on the 24th day of March, 1934, they did in said county

have in their possession about six pints of whisky with the unlawful intent to sell the same. The jury by their verdict found the defendants guilty as charged, but were unable to agree on their punishment.

October 1, 1934, the court rendered judgment and sentenced the defendant Beamis Cline to pay a fine of $200 and be confined in the county jail for 90 days, and sentenced the defendant Mary Cline to pay a fine of $50 and be confined in the county jail for 30 days.

From the judgments rendered upon the verdict they appeal.

It appears from the record that the home of the plaintiffs in error was a house in the residence section of the city of Lexington. There they had lived for more than five years. On the morning of March 24th Ivan Kennedy, undersheriff, and C. I. Adams and G. P. L. McKinney, deputy sheriffs, entered the house through the back door and found Mr. Cline sitting in the kitchen, an open jar about half full of whisky on a table near by, and found another jar under the icebox. Mrs. Cline was somewhere about the place. Mr. Cline later lost a leg and a day or two before the trial fell and injured his back. He was brought to the county seat in an ambulance and into court on a stretcher.

G. P. L. McKinney, the complaining witness, testified that a little after 6 o'clock the morning of March 24th they went to the back door and stepped in; that they had a search warrant; that an open jar about half full of whisky was sitting on the table; that they searched the place thoroughly and found another jar about half full of whisky under the icebox. The jars were introduced in evidence.

The testimony of the other two officers was in substance to the same effect.

The state rested, and counsel for the defendants moved the court to instruct the jury to return a verdict of acquittal for the reason that a complete defense is disclosed by the testimony of the state's witnesses and the same is insufficient to support a verdict of guilty.

Beamis Cline as a witness in his own behalf testified that the house where the officers found the whisky was the private residence of himself and wife. No one else lived there; that he had the whisky for his own use and told the officers so at the time; that he did not know that the other jar was under the icebox.

Cross-examination by the county attorney:

"Q. What business are you engaged in? A. I have farmed all my life. Q. You make your living down there selling whisky? A. No, sir. Q. You sell more whisky in the city of Lexington than any other three or four bootleggers down there? A. No, sir. By the Court: Objection sustained. Q. You made your living the last five years selling whisky? By the Court: Objection overruled. You can ask him that. Q. What money you made in the last two years you made selling whisky. A. No, sir. Q. What else have you been doing down there? A. I sold cars. I draw compensation from the governnment, $13 a month. Q. You have been convicted down there in the city court of being drunk several times. By the Court: Objection sustained. Q. I will ask you if you wasn't convicted in the county court of Cleveland county on November 8, 1933, for being drunk in a public place in Lexington. By the Court: Objection overruled. And paid a fine of $52.30 into Cleveland county. A. Yes. Q. I will ask you to state if you haven't been convicted of being drunk in a public place several times in the city of Lexington? By the Court: Objection overruled. A. No, sir. Q. How many fines have you paid down there? A. Not any. Q. Paid fines for being drunk? A. No, sir, fighting. By the Court: You will not consider the evidence offered about the fighting or whether he paid any other fine, the only

thing in this case, he has been convicted of the violation of the law in the city court, that is, a violation of the city law, the county attorney can ask him that. Q. You kept whisky at your house and kept it for the purpose of sale, you sold in half gallon or gallon lots to anyone that wanted to buy it? By the Court: Objection overruled. Q. Isn't that true? A. No, sir, it is not. Q. Isn't it a fact your place is known in the city of Lexington as being a place where anybody can buy liquor at any time, day or night? By the Court: Objection sustained. Q. You know it's a violation of law to have in your possession more than one quart of whisky? By the Court: Objection sustained. Q. How did you come to Norman today? A. In an ambulance."

Mrs. Mary Cline as a witness in her own behalf testified that she is the wife of Beamis Cline; had lived with her husband in the house where they now live five years; that when the officers came there she was out seeing after her chickens; came back in after the officers, and the jar was open when they came in; that her husband used whisky more or less all the time; that the jar the officers found under the icebox was placed there by her; that she had hid it there from him.

Cross-examination:

"Q. Beamis the past five years hasn't had any known occupation down there, either farming or anything else, since you married, outside of bootlegging? By the Court: Objection sustained. Q. Fact of the matter is, he has made all his money the last two and half years selling whisky to people around Lexington? By the Court: Overruled. A. No, sir, he hasn't sold any whisky. Q. What else does he do besides sell whisky? A. At this time he isn't able to do anything. Q. What did he used to do? A. He sold cars. Q. Whisky and what else? He didn't sell any whisky. Q. You never knew him to be guilty of selling any whisky? A. No. By the Court: Objections overruled. Q. I will ask you if on the 29th day of August

1931, Beamis Cline didn't sell a pint of whisky to George McKinney and a man by the name of Jim McMullins down there late at night? A. Not that I know of. By the Court: Objection sustained. The question and answer will be stricken. Q. After you made a sale of whisky down there you generally poured it out of the jar under the icebox? A. No, sir. Q. When Beamis wasn't present at your house and happened to be up town, you sold the whisky as much as he did, didn't you? A. No. Q. You have poured out and sold to people down there in the neighboring community just about as much whisky as Beamis sold them? A. No, I haven't sold whisky. Q. Do you generally call for Beamis when they want to buy whisky or what do you do? A. I don't know anything about it. We don't have whisky. Q. Where did you send them when they came down there to buy whisky? By the Court: Objection sustained. Q. Beamis sells more whisky than anybody else in Lexington, doesn't he? By the Court: Objection sustained."

In rebuttal the state called Bud Jennings, sheriff. He was asked and answered as follows:

"Q. How long have you been acquainted with the defendant? A. Ten or twelve years. Q. Are you acquainted with his reputation down there in the city of Lexington for being a bootlegger? By the Court: Objection sustained." C. I. Adams, deputy sheriff, recalled, testified: "Q. Are you acquainted with Beamis Cline? A. Yes, sir. Q. Are you acquainted with Beamis Cline's reputation down there in that community as being a bootlegger? A. He has a reputation of selling whisky. By the Court: Objection sustained." The record shows that in his closing argument the county attorney made the following remarks: "Beamis Cline had that whisky in my opinion for the purpose of selling it. By Mr. Cowan: I object to that remark as improper and highly prejudicial. By the Court: He said, 'in his opinion.' The officers don't go around and arrest anybody that don't intend to sell it. By the Court: Objection overruled."

At the close of all the evidence there was a motion for a directed verdict of acquittal for the reason that the evidence wholly fails to establish the offense charged.

It also appears that before the trial there was a motion to suppress the evidence on the ground that the same was obtained by an illegal search of the private residence of the defendants. But no evidence was offered in support of this motion.

Several errors are argued, among them being that the evidence is insufficient to sustain the verdict and judgments rendered thereon, and that the county attorney trying the case was guilty of conduct prejudicial to the rights of the defendants.

The flagrant impropriety of the cross-examination of the defendants is self-evident. That its effects upon the jury would be prejudicial is self-evident. That it was not inadvertent but was purposeful is apparent, and it would be discreditable to counsel's competency as county attorney to impute to him lack of knowledge of the impropriety of the questions asked on his cross-examination of the defendants. Also misconduct in calling witnesses as to the reputation of the defendants for being bootleggers.

It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character. Kirk v. State, 11 Okla. Cr. 203, 145 Pac. 307.

We have repeatedly condemned this practice.

In Vickers v. United States, 1 Okla. Cr. 452, 98 Pac. 467, 473, this court said:

"A public prosecutor is presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and by vituperation of the prisoner, and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and seeks no conviction through the aid of passion, sympathy, or resentment. The only way to secure fair trials is to set aside the verdicts so procured."

In Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101, this court in the syllabus held:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains objections to the questions."

In Hager v. State, 10 Okla. Cr. 9, 133 Pac. 263, the court says:

"Police court methods in the examination of witnesses in courts of record in Oklahoma will not be tolerated."

Our statute provides (section 268, St. 1931) that a witness may be discredited by showing on cross-examination his conviction of a criminal offense, and (section 3069, St. 1931) provides that:

"The rules of evidence in civil cases are applicable also in criminal cases."

This proof may be made either by the record or by cross-examination of the defendant. And cross-examination as to other separate and distinct transactions and offenses is not permissible, unless such testimony tends to prove the offense charged, and should in general be limited to matters pertinent to the issue, or such as may be proved

by other witnesses. Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341.

In the case of Brokhaus v. State, 11 Okla. Cr. 625, 150 Pac. 510, the court held:

"Upon a trial on an information charging that the defendant did have the possession of intoxicating liquors with the intent to sell the same, evidence of the general reputation of his home was incompetent to prove the charge."

In Thompson v. State, 9 Okla. Cr. 525, 132 Pac. 695, 698, it is said:

"A man cannot be condemned on what a few of his unfriendly neighbors say of him or of his home in cases like this. Such evidence is merely hearsay, and its admission was prejudicial to the defendant."

It is improper for a prosecuting attorney to state his opinion as to the defendant's guilt, or to state facts not proven by the evidence, or otherwise to get before the jury that which amounts to his own testimony. But he may state his opinion as to the defendant's guilt when he also states that this opinion is based upon the evidence in the case. Williams v. State, 4 Okla. Cr. 523, 524, 114 Pac. 1114, 1115.

A fair and impartial trial is guaranteed to all persons, whether innocent or guilty, and it is the duty of the trial court to uphold this guaranty.

The mere possession of intoxicating liquor, without intention to violate the law, is not a crime.

The statute (section 2626, Harlow's Supp. 1934) provides that the keeping in excess of one quart of intoxicating liquor "shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors."

A private residence, occupied as such, is immune from search, unless it, or some part of it, is used as a store, shop,

214

hotel, boarding house, or place for storage, or unless it is a place of public resort. Section 2639, St. 1931. It is undisputed that the house of these defendants was exclusively used as their private residence, and the testimony on the part of the state is not sufficiently certain to show possession of more than one quart of whisky by each defendant.

The defendants were entitled to the full benefit of the legal presumption of innocence, and could not properly be convicted unless the evidence established their guilt beyond a reasonable doubt.

We think that under the circumstances in this case the trial court should have sustained the defendants' motion for a directed verdict of acquittal.

For the reasons stated the judgments appealed from are reversed.

DAVENPORT, P. J., concurs.

EDWARDS, J., concurs in the conclusion as to a reversal, but dissents from the conclusion that the court should have directed an acquittal.