## HARPER v. STATE.

No. A-11395.  Oct. 3, 1951.

(236 P. 2d 272.)

Bassman & Gordon, Claremore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. Frank Harper has appealed from a conviction in the county court of Rogers county of the crime of unlawful possession of intoxicating liquor, where he was sentenced to serve a term of 30 days in the county jail and to pay a fine of $300, and costs.

The defendant for reversal claims first that his motion to suppress the evidence should have been sustained. It is contended that the search warrant described in fact more than one place and is therefore void and in violation of the Constitution of Oklahoma, and of the Constitution of the United States.

The place to be searched is described in the search warrant as: "The entire second story of a certain two story stucco building located on the S. 22 feet of lot one and the N. 13 feet of lot 2 in block 107 in the city of Claremore, Okla., occupied by Frank Harper as a dwelling house and public resort."

We conclude that the description meets all the requirements of the law, there being a specific and single place described, and alleged as occupied by one family. However, the defendant offered evidence in support of his motion to show that he lived in the "front" end of the second floor of the building in question, shown by other evidence to be the east end, and that one Pete Rodriquez, an aged Mexican, lived in room No. 5 in the far end of the upstairs, which would be the west end and had lived there for five years, and that one Claude Watson and wife also rented rooms on this second floor. From this evidence, which was not refuted, we conclude that Rodriquez was living separately from the defendant in a numbered room or apartment and maintained a separate home there on the second floor of the building in question. Whether this room No. 5 contained more than one section or division, or whether Rodriquez both cooked as well as slept in this apartment is not shown. At all events this was his home. It is not contended that he was accepted as a member of the family of the defendant and lived with them. And the gist of Rodriquez's testimony was to the effect that some times other people lived up there whom he did not know. Apparently the rooms or apartments were numbered as in a hotel or apartment house. As stated in Myer v. State, 34 Okla. Cr. 421, 246 P. 1105,

1106, "One of several light housekeeping apartments, however humble or unpretentious when occupied as a home, is just as sacred and entitled to the same constitutional protection as a separate mansion used as a home." Cited are Wiese v. State, 32 Okla. Cr. 203, 240 P. 1075; United States v. Innelli, D. C., 286 F. 731.

The evidence indicates that all the rooms were searched, including room No. 5 occupied by Rodriquez, although none of the occupants other than the defendant were present. Twelve pints and a like number of half pints of whiskey were found in the defendant's ice box in his apartment.

The question for consideration is whether or not, under the facts stated, more than one home was maintained at the address set out in the affidavit and warrant, and therefore in fact made the search warrant what is denominated a "blanket" warrant, and void.

The State maintains that the facts in the case of Gill v. State, 7 Okla. Cr. 247, 110 P. 2d 926, are similar to the facts in the within case and that the rules of law announced therein are applicable here. The defendant relies on the case of Aldridge v. State, 72 Okla. Cr. 298, 115 P. 2d 275, and cases cited.

In the Gill case the defendant occupied the entire upper floor at 413 "C" Avenue, Lawton; the furnishings all belonged to the defendant; defendant paid the rent and all utility bills; her niece and husband lived with her, the niece working in the home to pay for the room rental, and lived as a part of the family. Only one "place" was described in the search warrant as in the within case, but the similarity ends there. In the within case the evidence brought out that three separate homes were maintained at the address designated in the warrant. These people were not living as a part of the Frank Harper family, but lived in separate portions of the second floor of the building in question. There were apparently separate entrances from a hall. Therefore, we conclude that the rule announced in Aldridge v. State, supra, is applicable, and being:

"A search warrant, which named defendant and authorized the search of an entire apartment hotel building, instead of particularly describing apartment occupied by defendant, was void as being a 'blanket search warrant' covering the private place of abode of several people, where defendant occupied only an apartment in the described building and other families occupied apartments in same building."

And as said in Myer v. State, supra, "Where there is no joint interest apparent, a showing of probable cause against one tenant confers no right to search the home of another tenant in the same building." This building amounted to a rooming house or apartment building, and was a place of business. The description in the search warrant should have been such that the officer serving the warrant would know the exact premises or rooms or apartment in the rooming house to be searched. As said in Flowers v. State, 88 Okla. Cr. 252, 202 P. 2d 233, 234:

"This to the end that premises or rooms occupied by innocent individuals, against whom no affidavit has been filed, may not be searched. To hold otherwise would be to deprive the individual citizen of his constitutional rights against search and seizure, a sacred right which has been recognized since the adoption of the Constitution of the United States, and the Constitution of this State."

We conclude that the motion to suppress should have been sustained.

On trial the evidence was substantially as on motion to suppress, except there was additional evidence. Buck Wright, Chief of Police of Claremore,

stated that the defendant occupied an apartment on the second floor of the building searched; that there were ten or fifteen rooms on the second floor; and Frank Harper, the defendant, testified that he was 69 years of age, admitted that the liquor seized belonged to him, but swore that he had the same for his own personal use and did not have the same for sale, and swore that he was not in the liquor business, but was a farmer. And the State introduced in evidence a certificate from the Collector of Internal Revenue, Oklahoma City, dated January 27, 1950, certifying that Frank J. Harper possessed liquor dealer's stamp No. 66305 for period July, 1948 to June 30, 1949, with address of 119½ North Missouri, Claremore, Oklahoma, shown to be the address of the building occupied by defendant.

Counsel for defendant next contend "that the Court's Instruction No. 4 is a misstatement of the law applicable to the within case, and is highly prejudicial to his substantial rights." The pertinent portion of the instruction reads:

"You are further instructed it shall be unlawful for any person to have or keep in excess of one quart of spirituous, vinous, fermented or malt liquors or any imitation thereof, or any substitute therefor, * * * in or about his place of business or any place of amusement or recreation or any public resort or any club room, whether such liquor be intended for the personal use of the person having and keeping the same."

Of course, the defendant having testified under oath that he was keeping the liquor in question for his own personal use, and not for sale placed in issue that very question, notwithstanding the fact that he possessed a current retail liquor dealer's stamp, which was prima facie evidence that he held this whiskey for the purpose of sale, 37 O. S. 1941 § 81, and that he possessed more than one quart of whiskey, which was also prima facie evidence of an intent to sell, 37 O. S. 1941 § 82. The intent to sell is the gist of the offense of unlawful possession of intoxicating liquor. Sparks v. State, 77 Okla. Cr. 428, 142 P. 2d 377. This was the ultimate question for the determination of the jury.

As stated in an opinion by Judge Jones, in Bock v. State, 80 Okla. Cr. 28, 156 P. 2d 381, 382:

"In Oklahoma, the possession of intoxicating liquor for his own personal use is not unlawful regardless of the quantity a person has in his possession. Where a person has in excess of one quart in his possession under the statute such possession is prima facie evidence of an intent to sell, 37 O. S. 1941 § 82, but this is not conclusive, and where the defendant contends that he had the intoxicating liquor for his own personal use, such contention raises an issue for the determination of the jury under proper instructions. If they should determine that the defendant had it for his own personal use, it is their duty to return a verdict of not guilty. If they should determine that he had it for the purpose of sale, conveyance, or other unlawful purpose, their verdict should be that of guilt."

Under the instruction given all that was required of the state was to prove that defendant had possession of more than one quart of whiskey and the jury was not required to consider the question of intent. We therefore conclude that the substantive rights of the defendant were violated, and for such reason he is entitled to a reversal of the judgment entered.

Complaint is made concerning alleged improper remarks of the county attorney in argument to the jury wherein he stated as a fact that the defendant was a perjurer. The court instructed the jury to disregard the remark. A county attorney should be careful in his argument to the jury not to state his personal views as to the guilt of the person being prosecuted, or as to the truthfulness of his testimony, or that of any other witness. Such conduct might in

some cases constitute reversible error. He may, however, recite evidence and matters that if believed by the jury to be true, can be argued by him as forcing the conclusion of guilt or supporting the conclusion of perjury, etc.

The case is reversed and remanded to the trial court, with instructions to dismiss.

BRETT, P. J., and JONES, J., concur.