Ervin Ray YOUNG, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13117.

Court of Criminal Appeals of Oklahoma.

June 13, 1962.

Rehearing Denied July 18, 1962.

Jay C. Baker, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Plaintiff in error, hereinafter referred to as defendant, was charged with the crime of Murder in the District Court of Tulsa County, Oklahoma, stood trial, and on the 17th day of March, 1961, was found guilty of said crime and his punishment fixed at life imprisonment in the State Penitentiary.

His motion for a new trial was overruled, and timely appeal was perfected to this court.

From the record, it appears that about 9 P.M. on the evening of December 13, 1959, Dale Ray Jones, and his fiancé, Norma Sue Littlefield, were parked at a point approximately ½ mile East of Garnett Road on 31st Street in Tulsa County and that an automobile stopped near Jones's car. Miss Littlefield attempted to drive away and as she did so, three shots were fired. She testified that Jones was directed by an unknown person, attired in light colored clothes and carrying a rifle in his hands, to go to the rear of his (Jones's) car.

After Jones arrived at the rear of his car, Miss Littlefield testified that she heard a shot and saw Jones flee from the assailant, who fired several more shots, mortally wounding Jones.

The assailant immediately left the scene in his automobile, which Miss Littlefield later described as being a light colored 1955, 1956 or 1957 Chevrolet.

Miss Littlefield sought assistance and shortly thereafter a highway patrolman and a deputy sheriff of Tulsa County arrived at the scene.

Several expended .22 caliber rifle cartridge cases were found on the highway at the scene of the crime and the Deputy Sheriff took them to the sheriff's office where they were marked for purposes of identification and later introduced into evidence at the trial.

On December 28, 1960, Miss Littlefield identified the defendant, in a lineup at the Tulsa County Jail, as the assailant of the deceased. At the trial, she again positively identified the defendant as the person who fired the fatal shots. She testified that she denied being able to identify the assailant prior to the defendant's arrest because she was afraid that she might be harmed.

On direct examination, Mr. Houston Johnson, a Tulsa County Deputy Sheriff, testified that on the 16th day of December, he went to the Girdner farm, near Stilwell, Oklahoma, where he found fifteen .22 caliber rifle cartridge cases. These shells, which were found at a spot where Ervin Ray Young had been shooting a .22 caliber rifle several days prior thereto, were introduced into evidence.

Mr. Richard J. Poppleton, an F. B. I. Ballistics expert, testified that examination and comparison of the cartridge cases obtained at the scene of the crime with the cartridge cases obtained from the Girdner farm revealed that all of the cartridge cases had been fired from the same weapon. The witness testified that the J. C. Higgins automatic .22 rifle made the same impres-

sion as that which he found upon the cartridge cases of the shells in question. The witness testified that one of the best methods for identifying and comparing cartridges was the "rim fire" method.

Witness Jack C. Boatright testified that the defendant had borrowed his J. C. Higgins, Model 29, semi-automatic .22 caliber rifle on December 12, 1959.

Witnesses Bryan Girdner and Frank Girdner testified that on December 13, 1959, the defendant came to their home near Stilwell, Oklahoma, to hunt with Bryan Girdner, and that the defendant was driving a red and white 1957 Chevrolet automobile and was wearing light colored trousers. Both witnesses testified that the defendant fired the said rifle in the barnyard near their home and that no one else had fired a rifle there for some time prior to discovery of the .22 caliber cartridge cases introduced into evidence.

Defendant's witness, Hans Habermehl, who was introduced as a ballistics expert, testified to the effect that examination and comparison of breechblock markings is the only accurate manner in which .22 caliber rim fire cartridges can be determined to have been fired from the same or similar weapon. Mr. Habermehl further testified that a comparison of the marks found on the expended shells disclosed that the shells found at the scene of the crime were fired by two different guns and the shells found on the Girdner farm were fired from two different weapons. The witness identified the said marks as breechblock marks.

On rebuttal, the state introduced, over defendant's objection, unexpended cartridges of the type found at the scene of the crime and at the farm.

Then, Mr. Poppleton identified the marks appearing on the unexpended cartridges as stress marks made in the manufacture of the shells. These marks were similar to the marks appearing on some of the expended cartridges which latter marks had been identified by Mr. Habermehl as having been made by the breechblock at the time of firing of the shells.

Mr. Poppleton further testified that he had never seen breechblock marks that appeared as the marks did on the cartridge cases which he examined.

The defendant seeks reversal on five assignments of error.

As his first assignment of error, the defendant urges that:

"The trial court committed reversible error by defining in its instructions the term reasonable doubt."

The instruction of the Court upon which defendant bases his contention of error is as follows:

"A 'reasonable doubt' means a doubt founded upon reason. It does not mean a fanciful doubt, or a whimsical or capricious doubt, for anything related to human affairs and depending upon human testimony is open to some possible or imaginary doubt. When all the evidence in the case, carefully analyzed, compared and weighed by you, produces in your minds a settled conviction or belief of the defendant's guilt, such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs, when it leaves your minds in the condition that you feel an abiding conviction amounting to a moral certainty of the truth of the charge, then, and in that event you would be free from a reasonable doubt. Absolute or mathematical certainty is not required, but there must be such certainty as satisfies your reason and judgment, and such that you feel conscientiously bound to act upon it."

This instruction is identical to the instruction given by the Honorable Harold Medina in United States v. Dennis, 2 Cir., 183 F.2d 201.

The defendant cites several cases in which, he urges, that this Court has condemned the trial courts' attempts to define reasonable doubt. Defendant cites as authority the following cases: Harris v. State, 10 Okl.Cr. 417, 137 P. 365, 139 P.

846; Patzwald v. United States, 7 Okl. 232, 54 P. 458; Price v. State, 1 Okl.Cr. 358, 98 P. 447; Gibbons v. Territory, 1 Okl.Cr. 198, 96 P. 466; Reeves v. Territory, 2 Okl.Cr. 351, 101 P. 1039; Gragg v. State, 3 Okl.Cr. 409, 106 P. 350; Jones v. State, 54 Okl.Cr. 14, 13 P.2d 872; Abbott v. Territory, 1 Okl.Cr. 1, 94 P. 179, 16 L.R.A.,N.S., 260; Moore v. State, 90 Okl. Cr. 415, 214 P.2d 966.

■ We agree with our predecessors that the trial court should not undertake to define the terms "reasonable doubt", however, where the court below has given an instruction defining "reasonable doubt", we will carefully examine the instruction with reference to the whole record before us, and if it should appear from such scrutiny of the record that the effect of such instruction is not one of injury to the defendant, we will not reverse the cause solely on the basis of such instruction.

■ The defendant first attacks that part of the instruction which reads as follows: "A reasonable doubt means a doubt founded upon reason."

In Gibbons v. Territory, 1 Okl.Cr. 198, 96 P. 466, the court defined reasonable doubt as a "doubt that you can give a reason for," and instructions containing similar phrases have been given in the following cases: Price v. State, supra; Reeves v. Territory, supra; Gragg v. State, supra; Abbott v. Territory, supra; Jones v. State, supra; and Moore v. State, supra. In each case this court condemned such language.

However, in our opinion, there is a difference in meaning between the phrase, "a doubt that you can give a reason for", and the phrase, "a doubt founded upon reason." In the former instance, the instruction requires that the juror be able to give a reason why he doubts the defendant's innocence or guilt, whereas in the latter instance, it merely requires that the doubt be founded upon some process of reasoning, no matter how rudimentary or unexplainable it may be, and that it not be a thing of total fancy or whimsey.

We believe that the next sentence in the instruction lends credence to this interpretation of the instruction; This sentence reads as follows:

"It does not mean a fanciful doubt, or a whimsical or capricious doubt, for anything related to human affairs or depending upon human testimony is open to some possible or imaginary doubt."

The defendant next attacks as error the following portion of the instruction:

" * * * such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs."

In referring to this segment of the instruction, the defendant states that the "attempt here is to define a doubt as something the jury would be willing to act upon, and leads to confusion; for a doubt should cause one to pause or hesitate." An examination of the instruction in its entirety discloses that it is a conviction and not a doubt which the court is instructing the jury to act upon.

The defendant further urges that:

"It also impresses the writer of this brief as substantial error to define the expression with reference to a state of mind which one would have 'in matters of the highest importance relating to' his own affairs."

■ Since the defendant does not cite authority to substantiate this allegation of error we will not consider it:

"Proposition of error not supported by authority or seriously urged by the appellant will not be considered by the Court of Criminal Appeals. Nuttle v. State, Okl.Cr., 303 P.2d 462."

The defendant further submits that the court erred in the last sentence of the said instruction, which is as follows:

"Absolute or mathematical certainty is not required but there must be such certainty as satisfies your judgment, and such that you feel conscientiously bound to act upon it."

The defendant urges that this constitutes error because the court only speaks of satisfied reason and judgment; the jury is not informed to what degree they should be satisfied—that is, they are not told the satisfaction must be to a moral certainty.

We cannot agree with the position taken by the defendant. The part of the instruction next preceding the last sentence thereof appears as follows:

"When all the evidence in the case, carefully analyzed, compared and weighed by you, produces in your minds a settled conviction or belief of the defendant's guilt, such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs, when it leaves your minds in the condition that you feel an abiding conviction amounting to a moral certainty of the truth of the charge, then, and in that event you would be free from a reasonable doubt."

■ In our opinion, the instruction informed the jury that they must be satisfied to a moral certainty, but that such certainty did not mean an absolute or mathematical certainty. In Patzwald v. United States, supra, the Supreme Court of Oklahoma, speaking through the Honorable Justice Burwell, cited with approval the instruction approved by Chief Justice Shaw in Com. v. Webster, 5 Cush. 295, wherein Justice Shaw said:

"A reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction, to a moral certainty, of the truth of the charge; that is, *to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it.*" (Italics ours.)

The defendant next asserts that "perhaps the most serious complaint to be made

against this instruction is this: the instruction is stated in positive terms." The defendant does not cite supporting authority or apparently seriously urge this contention, therefore, we will not consider it under authority of Nuttle v. State, supra.

The last two contentions of defendant in regard to the said instruction are that: (1) the instruction constitutes error in that it is argumentative, and (2) the instruction is ambiguous and confusing and designed to mislead a jury.

We do not believe that the instruction is argumentative, or that there was undue repetition and reiteration in the instruction. Defendant cites Price v. State, supra, where this court found that the instruction therein was defective on such ground. We agree with the court in Price v. State, supra; however, an examination of the instruction in the case at bar, discloses it to be, in our opinion free of such repetition as to convey an impression that "[in] the opinion of the trial judge * * * the jury should convict this defendant" Price v. State, supra.

As to defendant's contention that the instruction is ambiguous and confusing, careful scrunity of the instruction leads us to believe that it is not sufficiently vague to mislead the jury in regard to the question of reasonable doubt. And this court has approved instructions containing language of similar import. See Chandler v. State, 3 Okl.Cr. 254, 105 P. 375, 107 P. 735; McDaniel v. State, 8 Okl. Cr. 209, 127 P. 358; Vance v. Territory, 3 Okl.Cr. 208, 105 P. 307.

We are therefore of the opinion that it was not error for the Court to submit to the jury the instruction above referred to and that the defendant was not prejudiced thereby.

■ As his second assignment of error, the defendant contends:

"The court erred in failing to declare a mistrial when the prosecutor expressed to the jury his personal opinion of the defendant's guilt."

The proceedings had from which defendant makes this assignment of error occurred during the county attorney's closing argument, and are as follows:

Mr. Simms: "Gentlemen, I could go over this evidence, but I don't desire to repeat or take any more of your time, because I believe in my own mind and in my own heart to a moral certainty that Young is guilty.

"Mr. McArthur: Now, your Honor, we are going to object to that statement, invading the province of the jury, request the Court to admonish the jury not to consider it.

"The Court: You should tell the jury that's based entirely upon this evidence.

"Mr. Simms: Yes, sir, based on the evidence, that is the way it seems to me. And Young, even in spite of the fact that he is a murderer, is a very fortunate man in a lot of ways, as compared to Dale. Because there he sits, two court appointed attorneys to talk for him. He is entitled to have his guilt or innocence, the question of whether he should live or die, passed on by you twelve jurors."

After the argument to the jury was completed, the defendant moved for a mistrial, which motion was overruled.

This Court has repeatedly adopted the rule stated by the Court in State v. Vinson, Mo., 107 S.W.2d 16, in which the Court said:

"The prosecuting attorney should not express his private opinion as to defendant's guilt * * * but * * * may state his conclusion based on the evidence."

Defendant cites the following Oklahoma Cases in which the prosecutor's expression of his personal belief of the guilt of the accused has been condemned: Childs v. State, 13 Okl.Cr. 461, 165 P. 622; Lawson v. State, 50 Okl.Cr. 443, 298 P. 896; Cline v. State, 57 Okl.Cr. 206, 47 P.2d 191; Thurmond v. State, 57 Okl.Cr. 388, 48 P.2d 845;

Kizer v. State, 67 Okl.Cr. 16, 93 P.2d 58; Holleman v. State, 74 Okl.Cr. 258, 125 P.2d 239; Hill v. State, 76 Okl.Cr. 371, 137 P.2d 261; Glasglow v. State, 88 Okl.Cr. 279, 202 P.2d 999; Fitzgerald v. State, 91 Okl.Cr. 437, 219 P.2d 1024; Harper v. State, 94 Okl.Cr. 371, 236 P.2d 272; Patrick v. State, 95 Okl.Cr. 141, 241 P.2d 418; Massey v. State, Okl.Cr., 279 P.2d 383; Carter v. State, Okl.Cr., 292 P.2d 435.

An examination of each of the cases cited discloses that the court in every instance considered the effect of the prosecuting attorney's improper remarks in light of the whole record, and with one exception, Childs v. State, supra, reversal or modification of sentence, in those cases where such was ordered, was not solely on the basis of the prosecuting attorney's improper remarks but rather, as such remarks coupled with other prejudicial matters arising at the trial affected the defendant's right to a fair trial.

In Childs v. State, supra, this court determined that the improper remarks of the prosecuting attorney may have determined the verdict and therefore reversed the cause. However, the court went on to say:

"There were other improper statements made by the assistant county attorney during the progress of the trial which we think tended to deprive the defendant of a fair and impartial trial upon the law and the evidence in the case."

The record in the instant cause, discloses that the trial was conducted fairly and that it was free of the prejudicial matters which were interjected into the cases which the defendant cites as authority for his second contention of error.

This being so, we believe that the instant cause comes within the purview of the rule annunciated in Massey v. State, Okl.Cr., 279 P.2d 383, in which the court said:

"It is the duty of the county attorney in his argument to the jury to confine :

himself to the facts as shown by the evidence. But he has the right to draw his deductions and conclusions, and unless the statement or arguments are such that deprive a defendant of his substantial rights, or are such that would arouse passion and prejudice of the jury to the extent that they would be swayed from arriving at a just verdict, the judgment and sentence will not be set aside on appeal."

In the Massey case, supra, the defendant was charged with murder, found guilty of manslaughter and sentenced to thirty six years in the State Penitentiary. In that case, the prosecuting attorneys made the following statements in their closing argument:

"Why did Massey run? Because in my opinion he knew he had killed another man and was wanting to get as far away from there as he possibly could.

" * * * because in my opinion ladies and gentlemen of the jury, this defendant knew that he had killed, stabbed, slashed Dennis Potter and left him to die on the floor.

"I will say this. I will say that Dennis Potter was murdered by Cecil Massey and I will say further that if this jury sees fit to give him the death penalty for doing it, that I sincerely feel you are perfectly justified in doing it. Look at the hands of Cecil Massey, smeared with blood of Dennis Potter! Why should I hesitate to say you were justified, when the rule is that whoever sheddeth man's blood shall also by his own blood be shed."

In the Massey case, supra, the Court did admonish the jury to disregard the prosecuting attorney's expression of his personal opinion.

In the case at bar, there also was an admonition, though admittedly not a strong one and one only indirectly addressed to the jury. However we believe that the Court's admonition, "You should tell the jury that's based entirely upon this evidence," was sufficient to apprise the jury that it was to consider the prosecuting attorney's opinion only to the extent that it was based upon the evidence.

Thus in view of the record of the case, which shows the trial to be free of other prejudicial matters, and the admonition of the court, we believe that the remarks of the County Attorney, although improper, were not of such a prejudicial nature as to arouse the passion or prejudice of the jury and thus deprive him of his constitutional right to a fair and impartial trial.

For the reasons above set forth, we believe that defendant's second assignment of error is wholly without merit.

■ For his third assignment of error, the defendant contends:

"The court erred in failing to quash and set aside the indictment for the reason that the same was not signed by the foreman of the grand jury."

In oral argument on the 7th day of Feb., 1962, defendant's counsel waived this assignment of error, therefore, the same will not now be considered on this appeal.

■■ For his fourth assignment of error, the defendant urges that the court committed reversible error by permitting the introduction of hearsay evidence, over objection interposed by defendant, concerning the ownership of an automobile found in East St. Louis, Illinois, because the presence of the abandoned automobile tended to show flight by the defendant and an effort by the defendant to dispose of incriminating evidence.

The testimony of Deputy Sheriff Thurman upon which this assignment of error is predicated reads in part as follows:

"Q. What was your purpose, Officer Thurman, in going to East St. Louis, Illinois?

"Mr. Hickman (for defendant): Objected to as immaterial.

"The Court: Overruled.

"A. To investigate.

"Mr. Hickman: Objected to.

"A. (Continuing)—and recover the automobile.

"Mr. Hickman: Whatever he says is based on hearsay.

"The Court: Overruled; you may proceed.

"A. To investigate an automobile that had been recovered there.

"Mr. Hickman: Now we move to strike that on the ground he's testifying to something that somebody else told him.

"The Court: Overruled.

"Mr. Hickman: Hearsay.

"A. (by Mr. Hall) And did you investigate such automobile:

"A. I did.

"Q. And in your investigation, did you determine who the owner of that automobile was?

"A. Mr. Hickman: Objected to as not the best evidence.

"The Court: Overruled.

"A. I did.

"Q. (by Mr. Hall) And who owned that automobile?

"Mr. Hickman: Same objection.

"The Court: Overruled.

"A. Ervin Ray Young.

"Q. (by Mr. Hall) Is that the same Ervin Ray Young who is the defendant in this case?

"A. It is.

"Q. At the time that you observed—

"Mr. Hickman: (Interrupting) We move to strike all of the testimony regarding the car for the reason it's based upon hearsay, and the balance of it with reference to the ownership for the reason it's not the best evidence.

"The Court: Overruled."

On cross-examination of the witness, the following testimony was elicited:

"Q. All right. Did you have occasion to check the license number of this car you say is Young's.

"A. Yes, sir.

"Q. And how did you check on that? What did you do?

"A. I didn't personally check this.

"Q. Well, you know what was done; is that right?

"A. Yes, sir.

"Q. And what was done in checking it?

"A. Throw of check against tag registrations.

"Q. And that is the conclusive thing that showed the car belonged to Ervin Ray Young; is that correct?

"A. That's correct."

An examination of the casemade reveals that the witness Thurman testified, without objection being made by the defendant, that he was conducting a search for the defendant; that the search included other states; and that he made a trip to East St. Louis, Illinois.

Thurman further testified that the purpose of the trip was to investigate, and at this point, defendant interposed an objection, for which no grounds were stated and from the overruling of which no exception was taken. Thereafter, Thurman testified, without objection by defendant, that while in East St. Louis, Illinois, he had observed a red and white 1957 Chevrolet automobile. (C–M, p. 258). This testimony was given after defendant had previously objected in the examination in chief to the introduction of evidence concerning the automobile. However, the objection was not renewed at this latter time.

Having failed to object to the admission of this evidence, the defendant cannot now complain of it, for, as this court stated in England v. State, Okl.Cr. 276 P.2d 270:

"Where the record does not show that counsel for appellant objected or excepted to the admission of certain evidence complained of, his assign-

ment of error thereon is not reviewable, because not properly preserved."

Further testimony by Thurman reveals that the defendant had surrendered himself to the sheriff of Atoka county at Atoka, Oklahoma, and that Thurman had gone to Atoka to pick up the defendant.

Thereafter, Mr. Robert L. Christison, a bus driver, testified that the defendant had boarded his bus at Dallas Texas, on December 22, 1959, and had ridden on the bus to Atoka.

█ In Maiden v. State, Okl.Cr., 273 P.2d 774, this Court said:

"The reception of hearsay evidence over objection is error. Whether it is reversible error depends upon all facts and circumstances of the case and the prejudicial effect which the reception of such evidence might have had on the jury."

█ In the case at bar, there is evidence, to which no objection was interposed, from which the jury might infer the flight of the defendant and an attempt to dispose of his property, and such inferences would have the same probative effect as direct testimony:

"A criminal case * * * may be proved by circumstantial evidence, and reasonable inferences have the same probative effect as direct testimony." (State v. Bennett, 6 Wash.2d 208, 107 P.2d 344.)

Furthermore, there was competent evidence upon which the jury could have convicted the plaintiff, aside from any evidence from which defendant's flight from apprehension or disposition of his property might be inferred.

█ In Rhea v. Territory, 3 Okl.Cr. 230, 105 P. 314, this Court said:

"While it is true that, as a general proposition, a defendant is entitled to a trial upon legal evidence alone, yet it is equally true that the admission of incompetent evidence which would not have prejudiced the defendant is not

ground for reversal and constitutes harmless error."

In the case at bar, the defendant was positively identified by an eye-witness to the crime and there was other competent evidence connecting him with the crime.

Therefore, a review of the record of the case leads us to conclude that the reception of the alleged hearsay evidence was not reversible error, and that the defendant's fourth assignment of error is devoid of merit.

█ As his fifth assignment of error, the defendant contends that the trial court committed error in admitting into evidence certain live cartridges of .22 caliber ammunition without first requiring the establishment of identity or similarity between such cartridges and the casings in evidence and without there being shown similarity in the manufacture of such casings.

The defendant urges that the evidence complained of is in the nature of a test or experiment, and he cites from Underhill, Criminal Evidence and Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129, concerning the admissibility of such evidence.

We agree with these authorities as to the statements of law cited by the defendant. However, we do not believe that they are applicable in the instant case.

The evidence in our opinion, was not in the form of an experiment or test. Rather, the live ammunition which had similar markings as some of the expended cartridge cases, was introduced in evidence by way of rebuttal of the testimony of defendant's expert witness.

The evidence appears to have been introduced to buttress the rebuttal testimony of Mr. Poppleton, the state's expert witness, who had testified on direct examination that the marks were caused by stress marks in the manufacture of the cartridges and whose testimony had been contradicted by the testimony of the defendant's expert witness that the marks were caused by the breechblock.

It should be here noted that the State laid a proper foundation for introduction of the live ammunition into evidence by the testimony of Mr. Poppleton as to the method of manufacture of .22 caliber cartriges and his testimony as to the similarity of markings on the live and the expended ammunition. The expended shells were further related to the unexpended shells by his testimony that one of the live cartridges (State's Exhibit 16) was known as a "golden bullet" and that the expended cartridges introduced into evidence were also referred to as "golden bullets".

The evidence of the live ammunition was merely cumulative in nature, there having been evidence previously elicited as to what the marks found on some of the expended cartridges represented.

This Court has held that:

"Evidence which is merely cumulative will not be held reversible error, even though the evidence be inadmissible (Wood v. State, 72 Okl.Cr. 347, 116 P.2d 734."

In the case at bar, the record does not disclose that the admission of the live ammunition into evidence prejudiced the defendant.

This being true, we will follow the rule laid down by this court in Hardesty v. State, Okl.Cr., 291 P.2d 351, wherein the court said:

"Criminal Court of Appeals will not reverse a case for ruling on evidence occurring at the trial unless the record discloses a miscarriage of justice, or that the error relied on constituted substantial prejudice to defendant's rights."

After careful examination of the record in this cause, we are of the opinion that the judgment and sentence rendered against the defendant by the District Court of Tulsa County should be, and the same is, hereby affirmed.

Judgment affirmed.

NIX, P. J., and BRETT, J., concur.