Teddy Leo NOLAND, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–527.

Court of Criminal Appeals of Oklahoma.

June 8, 1976.

Rehearing Denied June 25, 1976.

John D. Harris, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Teddy Leo Noland, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Nowata County, Case No. CRF–75–7, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. His punishment was assessed at ten (10) years to life imprisonment in the custody of the State Department of Corrections, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Jesse James Robinson testified that he had been a resident of Nowata County for twenty years; that he spent the day and evening of February 8, 1975 working at the Highway Grill, an establishment located on Highway 169 in Nowata in which he owned a part interest. Robinson was questioned about prior convictions and acknowledged that he had served five years in the Oklahoma State Penitentiary in McAlester as a result of two 1968 convictions in Washington County. He further testified that on February 8, 1975 Donnie Spencer entered the Highway Grill shortly after noon and stayed for the remainder of the afternoon and evening; playing pool and drinking beer. Robinson had known Spencer for about eight years and he visited with him throughout that afternoon. Robinson related that the defendant, whom Robinson had known for twelve years, came into the bar between 2:00 p. m. and 4:00 p. m. on February 8, 1975. Robinson recalled that the defendant was wearing oil field coveralls and that he stayed for about an hour during which time he drank some beer with Donnie Spencer and borrowed $10 from Robinson's wife. Robinson testified that he did not recall noticing any animosity between Spencer and the defendant and he first acknowledged, and then denied, that he had any telephone conversations with the defendant during the afternoon and evening hours of February 8, 1975. Robinson did relate that the defendant left the bar late in the afternoon but returned again at about 7:50 p. m. to repay the $10 which he had earlier borrowed from Robinson's wife. This task accomplished, the defendant left again. Approximately two

hours later, at about 9:15 p. m., Robinson and Spencer left the Highway Grill and drove to a U-Tote-M store to get some tomatoe juice. The route which they chose took them past the intersection of Delaware Street and Highway 169 where they noticed the defendant sitting in his car which was parked on the lot in front of the Bar-B-Q Pit on the southeast corner of Delaware Street and Highway 169. When Robinson and Spencer arrived back at the Highway Grill, Robinson learned from Spencer that the defendant was planning to kill Spencer. Robinson testified that after hearing this news he walked one block south from the Highway Grill to the parking lot of the Bar-B-Q Pit where the defendant was sitting behind the steering wheel of his parked car which was facing the northeast. As Robinson approached the car he noticed that the defendant had a rifle in the car with him. Robinson testified that he went to the window on the driver's side of the car and talked briefly with the defendant. The defendant told him that "that man" had whipped him for the last time. Robinson recalled that he told the defendant, "not to be a damn fool and go on home and go to bed." The defendant responded by rolling his window up and Robinson left the parking lot. At 9:35 p. m. Robinson arrived back at the Highway Grill; Donnie Spencer was still there. Spencer ordered a bottle of beer, drank about half of it and then left the Highway Grill walking south. A few moments later a man came into the Highway Grill and told Robinson that there was body lying down at the corner. Robinson recalled that he went down to the corner where he found Spencer lying on the northeast corner of Delaware Street and Highway 169; although he thought that Spencer was still alive he did not try to talk to him. He noted that the defendant's car was no longer parked in the lot in front of the Bar-B-Q Pit across the street. On cross-examination Robinson testified that he thought that he had seen a rifle in the defendant's car on the night of the shooting but that he could not be sure.

Walter Parrish testified that he was a patrolman for the Nowata Police Department; that on the night of February 8, 1975 at approximately 9:50 p. m. he had driven into the driveway of the DX Station at the intersection of Delaware Street and Highway 169 and had noticed a blue car, with a black top, with a driver behind the wheel sitting on the lot of the southeast corner of the street. Officer Parrish also remembered that there was a dent in the left rear fender of that car. Officer Parrish further testified that after leaving the DX Service Station he drove straight to City Hall on routine business. Shortly after arriving at City Hall, Officer Parrish was informed by the dispatcher that someone had called about a body at the corner of Delaware Street and Highway 169. He immediately proceeded back to the intersection of Delaware Street and Highway 169 where he observed a small group of people clustered around a body on the ground. The body was lying face up about six feet north of the stop sign on the northeast corner of the intersection. Officer Parrish was informed that the man had been shot, he examined the body and found a bullet hole in the abdomen just above and to the left of the navel. Officer Parrish found the body to be cold and instructed his partner to notify the District Attorney's office and the Sheriff's office and to put in a call for the ambulance. When the ambulance arrived Officer Parrish requested that the body not be removed until the Sheriff had arrived and had an opportunity to examine the scene. Officer Parrish concluded his testimony by relating that the body was removed from the scene and taken to the Nowata General Hospital and after the ambulance left he returned to his regular duties. On cross-examination Officer Parrish testified that he reached the scene of the shooting approximately a minute and a half after the first report of trouble came into the dispatcher. He estimated that the ambulance arrived approximately 3 to 5 minutes later. He acknowledged that neither he nor the ambu-

lance driver checked the victim for a heartbeat or pulse but noted the temperature was 15 degrees and there was no steam exuding from the mouth or nostrils of the victim at the time he arrived. He explained that the body was taken to the hospital so a doctor could make an official pronouncement of death.

Dr. J. W. Cochran testified that he was a pathologist practicing in Bartlesville and that on February 9, 1975 he performed an autopsy on the body of Donnie Spencer at the Benjamin Funeral Home in Nowata. Dr. Cochran testified that he found a small gunshot wound on the abdomen just slightly above and to the left of the navel, a large amount of blood in the abdomen, a perforation of the small intestine and a fracture of the bone of the spine. Dr. Cochran also found a spent bullet in the tissue beneath the skin of the back and he stated that it was his opinion that Donnie Spencer had died as a result of a severed blood vessel in the abdomen caused by a gunshot wound. Dr. Cochran speculated that a wound of this type suffered by Spencer would cause death within five to ten minutes. He also related that after finding a bullet in the body he marked the base of the bullet and turned it over to the sheriff.

Lewis R. Arnold testified that he was the Nowata County Sheriff; that on the night of February 8, 1975, he was notified by his dispatcher that a homicide had occurred on the corner of Delaware Street and Highway 169. He proceeded to the scene where he found Officer Walter Parrish, an ambulance driver, and a group of observers, milling around a body on a stretcher. After checking the position of the body and examining the area, the Sheriff told the ambulance driver to take the body to Nowata County General Hospital. At the hospital, Sheriff Arnold was able to identify the victim as Donnie Spencer from the contents of a wallet found on the body. He later confirmed the identity of the victim by speaking with Spencer's family. Sheriff Arnold further testified that he

was present at the Benjamin Funeral Home on February 9, 1975 when Dr. J. W. Cochran performed an autopsy on the body of Donnie Spencer; that he observed Dr. Cochran locate and remove a spent bullet from the body. After Dr. Cochran marked the bullet with the Sheriff's pocket knife he turned the bullet over to Sheriff Arnold and the Sheriff dispatched it to the Oklahoma State Bureau of Investigation. Sheriff Arnold related that his investigation of the shooting of Donnie Spencer led him to interview a number of people and culminated in the filing of an information against the defendant and the issuance of a warrant for the defendant's arrest. On February 14, 1975, Sheriff Arnold found the defendant's 1967 Chevrolet Caprice abandoned on a gravel road eleven miles east and one mile north of Vinita. The car was placed in storage and searched for bullets, cartridges and weapons but none were found. Sheriff Arnold concluded his testimony by stating that the clothing that Donnie Spencer was wearing on the night he was shot was sent to the Oklahoma State Bureau of Investigation for the purpose of having nitrate tests performed on the clothing and the tests came back negative.

Carl Cloud testified that he was a firearm and tool mark examiner for the Oklahoma State Bureau of Investigation, that he had been employed by the Bureau for eighteen years, fourteen years in the crime investigation section, and four years in the firearm and tool mark section. He stated that he had made examinations of ammunition in approximately 300 to 500 cases. Mr. Cloud testified that in connection with the present case he had performed a nitrate test on a blue vest which was worn by Donnie Spencer on the night that he was shot. The results of the test were negative leading Mr. Cloud to conclude that the distance between Donnie Spencer and the gun which fired the fatal shot was great enough to allow the nitrate to fall from the firing pattern before the bullet reached him. Mr. Cloud testified that he also examined a bullet which he received from

Nowata County Sheriff Lewis R. Arnold. He examined the bullet visually with the aid of a magnifying glass, he weighed the bullet and measured its diameter at the base. From these tests he concluded that it was a .30 caliber bullet which had been damaged by some impact. On cross-examination Mr. Cloud testified that the weight of the bullet which he examined was 103 and 1/8 grams and that it could have been fired from a rifle or a revolver. He stated that he could make no estimate of what distance an object had to be from the muzzle of a gun to avoid a trace of nitrate because the distance that nitrate remained in the firing pattern would vary with each gun. Mr. Cloud confirmed that no nitrate test had been run on the interior of the defendant's 1967 Chevrolet Caprice. Sheriff Lewis R. Arnold returned to the stand to testify on redirect examination that he arrested the defendant in the defendant's attorney's office in Tulsa on February 12, 1975. On re-cross examination the Sheriff acknowledged that a warrant had been issued for the defendant's arrest on February 11, 1975 pursuant to an arrangement between the Assistant District Attorney in Nowata and the defendant's attorney in Tulsa at 10:00 a. m. on February 12, 1975 and when he arrived he found that the defendant was present and he made the arrest.

■ The defendant's first assignment of error is that the trial court erred in overruling the defendant's challenge to the panel from which the jury was selected. The defendant asserts that in a hearing held on defendant's motion to disqualify the panel, Mildred H. Stallcop, Court Clerk of Nowata County, "testified that she, of her own volitition, had excused numerous veniremen for what she considered to be good and valid reasons." The defendant argues that 38 O.S.Supp.1975 § 21 provides that only the court may excuse or discharge any person drawn and summoned as a juror. As we read the record the Court Clerk's testimony was not that she, on her own authority, excused persons selected for jury duty but rather that the judges did the excusing and she merely executed their orders:

"Q. All right, I have been supplied here today two pages consisting of the 1975 jury list.

A. Yes, sir.

Q. Which originally consisted of a hundred and twenty-five names.

A. Yes, sir.

Q. And I believe that this morning you informed the Court that there were forty-five supposed to be present?

A. Yes, sir.

Q. Ma'am, let me ask you who excused the other eighty?

A. Judge Boose and Judge Chappel, and I was given the privilege under their orders to excuse ones that came under the qualifications to claim their exemption." T.T. 7

We find defendant's first assignment of error to be without merit.

■ The defendant's second assignment of error is that the court erred in failing to administer the oath to all prospective jurors prior to voir dire. At the trial, after the jury was sworn, the defendant moved for a mistrial on the basis that seven of the thirteen jurors impaneled took no oath to answer questions truthfully on voir dire. The trial court denied the motion.

In *Greathouse v. State,* Okl.Cr., 503 P.2d 239 (1972) we stated:

"The question of the competency of jurors is addressed to the sound discretion of the trial court, and absent an abuse of discretion, the finding of the trial court will not be upset on review. *Nichols v. State,* Okl.Cr., 418 P.2d 77 (1966)."

The defendant does not offer arguments that the trial judge abused his discretion in denying the motion for a mistrial in the instant case and it is our opinion that he did not abuse his discretion.

The defendant's fourth assignment of error was that the court erred in refusing

to sustain defendant's demurrer to the evidence and in refusing to set aside the verdict of the jury. The defendant argues generally that the evidence presented at the trial was insufficient to sustain a conviction for the crime of Murder in the Second Degree. We have examined the record very carefully. There is no doubt that much of the evidence upon which the conviction was based was circumstantial. In similar cases we have applied the rules which we summarized in *Logan v. State,* Okl.Cr., 493 P.2d 842 (1972):

> "While much of the evidence is circumstantial, this Court has often held a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Young v. State,* Okl.Cr., 373 P.2d 273. Additionally, circumstantial evidence need not exclude every hypothesis or negate any possibility other than guilt. *Bailey v. United States,* 410 F.2d 1209 (10th Cir. 1969). And finally, it is the exclusive province of the jury to weigh the evidence and determine the facts. *Jones v. State,* Okl. Cr., 468 P.2d 805; and where there is competent evidence from which the jury might reasonably conclude the defendant is guilty, the case will not be reversed on appeal on a contention that the evidence is not sufficient. *Brewer v. State,* Okl.Cr., 452 P.2d 597."

We conclude that in the present case there was competent evidence from which the jury might reasonably conclude that the defendant was guilty.

The defendant's remaining assignments of error are not supported by any authority and will not be considered by this Court. We have stated many times:

> "It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will

not search the books for authorities to support the mere assertion that the trial court has erred."

*Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969).

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly, *AFFIRMED.*

BRETT, P. J., concurs.

BLISS, J., concurs.