## PATRICK v. STATE.

No. A-11465. Feb. 20, 1952.

(241 P. 2d 418.)

142

E. William Brown, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, J. Paul Patrick, was charged by an information filed in the district court of Oklahoma county with the crime of larceny from the person, was tried, convicted, with the punishment left to the court; thereafter the court sentenced the defendant to serve two years in the State Penitentiary; and he has appealed.

Three propositions are presented in the brief of the defendant: First, the evidence was insufficient to sustain the verdict. Second, the court erred in overruling defendant's motion to quash, his demurrer and his plea in abatement. Third, the county attorney was guilty of prejudicial misconduct in his argument to the jury.

The defendant was charged along with Cruse Galindo and Ida Mae Paredes with taking $580 by stealth and fraud from one Wayne E. Waller.

The proof of the state showed that Wayne E. Waller was a farmer living at Piedmont, near Oklahoma City. He had sold cattle at the stockyards in Oklahoma City and on August 8, 1949, he cashed the check which he received for his cattle in the amount of $569.00. After making some purchases of groceries at Bethany, he placed about thirty dollars in currency in his right front pants pocket and placed the rest of the money in his billfold in his back pants pocket. He came to Oklahoma City and went to the El Centro Bar and drank several bottles of beer. It was there that he met Cruse Galindo, who came to where Waller was sitting at a table and sat down and talked with him. Later Galindo brought Ida Mae Paredes, a codefendant, over to the table where Waller was drinking and

they all drank whiskey together. Later, at the suggestion of Galindo, the three of them went to Pat's Night Club, operated by the defendant Patrick. Waller paid the cover charge at the night club for the three of them. Waller purchased some more whiskey at the club and they all drank. The defendant Patrick brought two pints of whiskey to the table and Waller paid him six dollars a pint for the whiskey. Patrick sat down at the booth with them and all four of them drank some of the whiskey. Waller became drunken. About midnight Galindo, Ida Mae Paredes, Patrick, and Waller got in Patrick's car and drove to the Hutton Courts on Highway 66, northwest of Oklahoma City. Waller was intoxicated but he remembered that the four of them went into a cabin, took a drink of whiskey, there was a commotion in which they shoved him against the wall and Galindo, Paredes, and Patrick ran out of the cabin, got in the car of Patrick and left. After they had gone Waller missed his billfold. He then went to the man in charge of the tourist courts and told him what had happened. Waller then secured a cab which drove him to his home near Piedmont. Waller and his wife then returned to Pat's Night Club and accosted defendant Patrick and accused him of stealing his billfold, but Patrick denied knowing anything about it. Waller testified that he had his billfold on his person when he left Pat's Night Club to go to the Hutton Courts because he could feel it in his hip pocket and that he missed it after the defendants had taken him to the Hutton Courts. Waller further stated that he had no association with any other parties on that evening except the three defendants, Patrick, Galindo and Paredes.

Ida Mae Paredes, a codefendant, testified for the state. She swore that on the night in question Cruse Galindo invited her to have some drinks at the El Centro Bar and she sat down at a booth with the prosecuting witness Waller, and Galindo, and a girl by the name of Priscilla Cosar. Waller purchased some whiskey and beer and they all drank it. About 30 or 40 minutes later the four of them went to Pat's Night Club in a cab. There they drank some whiskey, and Galindo got up from the booth and talked to Mr. Patrick. Later Waller purchased some whiskey from the defendant Patrick and all of them, including Patrick, drank the whiskey. Waller took the money from his billfold to pay for the whiskey. Later Waller bought a second bottle of whiskey from Patrick and became quite intoxicated. Later defendant Patrick stopped her as she was coming from the rest room and told her to get Waller's billfold and that she, Galindo and Patrick would split the money three ways, and she agreed. Later while she was dancing with Waller she got Waller to hand her his billfold so she could count his money. She saw there were three or four hundred dollars in the billfold. They were sitting in the booth and Waller laid his hand over in her lap while she was counting the money. Patrick reached down and grabbed the billfold and walked to the back of the night club with it. Waller had become very drunk. Later Galindo gave the billfold back to her and it had nine one dollar bills in it. She, Patrick, and Galindo then took Waller to a tourist cabin. They were in Patrick's car. She threw Waller's billfold on a chair and the three ran out and got in the car and left. Later that night Waller came back to the night club and Patrick told her and Galindo to get out as Waller was going to start some trouble. She further testified that Priscilla Cosar left Pat's Night Club shortly after they arrived there and was not with them any more that evening. On cross-examination she admitted serving a term in the penitentiary for forgery and of a large number of convictions for being drunk and for vagrancy by reason of being a prostitute. She further testified that Galindo gave her only $20 of the money that was taken from the billfold.

Charles Hutton, manager of the Hutton Courts at 3036 Northwest 39th street in Oklahoma City, testified that he was on duty at the courts on the night of August 8, 1949. The defendant Patrick came in during the night and rented a room and paid him $3. Hutton then walked out and took the license number off

of the automobile and it was No. 1-9985. About 15 minutes after Patrick registered, he and some others left. Shortly afterwards Waller came to him and asked him to call a cab, which he did. He then checked the room which he had rented to Patrick and found that a stove had been kicked back against the wall and a gas connection broken. He found a billfold in the chair, which had Waller's identification in it and also his driver's license. He later delivered the billfold to Sherman Brown, deputy sheriff. Waller was drunk when he saw him. It was then stipulated that license number 1-9985 was the Oklahoma license number issued for the car of Mrs. Hazel Patrick, the wife of defendant, for the year 1949.

Sherman Brown, deputy sheriff, testified concerning his investigation but his evidence was only cumulative to what had been testified to by the other witnesses concerning the registration by Patrick at the Hutton Courts and that the license number of the car which was driven to the Hutton Courts was for an automobile belonging to the wife of defendant Patrick.

The only witness testifying for the defendant was his wife, who swore that Waller, Galindo, Paredes, and another girl, came to the night club where she was working with her husband. Waller had two pints of whiskey on him. Waller became pretty drunk. Later she saw Galindo and Ida Mae Paredes dragging Waller out of the night club. Her husband, the defendant Patrick, did not leave the place of business that evening at all. Later Ida Mae Paredes and Galindo came back to the night club by themselves. About half an hour later Waller returned and asked her if the people were there that had taken him out, and told her that they had robbed him. She told Waller to call the officers, and she called her husband and related what had occurred, and her husband told Waller to call the law. She then saw Waller go talk to Galindo and Paredes and they left the night club together. She heard Ida Mae Paredes say, "I don't have your money", and further said, "If you will go back to the courts where we left you, you will find your billfold where I threw it up against the wall". About two hours later Waller came back with his wife. She again told him that they should call the officers, but they did not do it. The next night Waller returned again looking for Galindo and Paredes.

The testimony of the accomplice shows the manner in which the crime was committed. She was fully corroborated by the testimony of Waller and the manager of the tourist courts. There was abundant evidence to sustain the conviction.

The principal contention of the defendant rests in his assignment that the trial court erred in overruling his attacks made on the information by a motion to quash, his demurrer and plea in abatement.

In support of these pleadings the defendant showed that on September 21, 1949 a grand jury which was sitting in Oklahoma City returned an indictment against the defendant and his two codefendants, charging them with the crime of larceny from the person of Wayne Waller, which indictment charged the same identical offense which was later set forth in the information out of which the conviction of defendant was sustained. A motion to quash the indictment was filed. The motion was sustained and the district court dismissed the indictment. Thereafter on November 8, 1949, the county attorney filed a preliminary complaint against the defendant, charging him with the identical offense for which he had been indicted. The defendant was bound over for trial in the district court and the information there was filed against him. A motion to quash the information was filed on the ground that the indictment charging the identical offense had been quashed and no order had been made directing the county attorney to file an information against the accused. At that time Judge Van Meter entered an order nunc pro tunc in Case No. 19496, correcting the minute and order theretofore

entered in said cause, by showing that he had directed that said cause be refiled and resubmitted by the county attorney of Oklahoma county by an information.

Case No. 19496, in which the order nunc pro tunc was entered, was the case where defendant was charged by subsequent information, while Case No. 19399 involved the case where the indictment was returned by the grand jury.

We deem it unnecessary to enter into a discussion as to whether the court erred in entering the order nunc pro tunc, or as to the effect of said order if it was legally made, as said questions are not pertinent under the view which we have taken of this assignment of error.

The defendant in his brief relies solely upon the case of Ray v. Stevenson, 71 Okla. Cr. 339, 111 P. 2d 824, 829. This case involved the procedure in connection with the dismissal of indictments or informations in misdemeanor cases, and we have found no language therein which could be construed as sustaining the contention of counsel for petitioner. It was therein stated:

"We do have certain statutes providing the procedure for the dismissal of indictments or informations where a demurrer or a motion to quash is sustained to an indictment or information upon the arraignment of a defendant in the district court in connection with a felony charge.

"These statutes are as follows: Sec. 2937, O. S. 1931, 22 Okla. St. Ann. § 493; sec. 2940, O. S. 1931, 22 Okla. St. Ann. § 496; sec. 2942, O. S. 1931, 22 Okla. St. Ann. § 498; sec. 2943, O. S. 1931, 22 Okla. St. Ann. § 499; sec. 2944, O. S. 1931, 22 Okla. St. Ann. §500; sec. 2945, O. S. 1931, 22 Okla. St. Ann. § 501; sec. 2946, O. S. 1931, 22 Okla. St. Ann. § 502; sec. 2948, O. S. 1931, 22 Okla. St. Ann. § 504; sec. 2951, O. S. 1931, 22 Okla. St. Ann. § 507; and sec. 2952, O. S. 1931, 22 Okla. St. Ann. § 508.

"Section 2952, supra, reads as follows: 'If the demurrer is sustained, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that the objection on which the demurrer is sustained may be avoided in a new indictment or information, direct the case to be resubmitted to the same or another grand jury, or that a new information be filed.'

"If the defendant had been arraigned upon a felony charge and had presented a demurrer to the original indictments, and the case had been dismissed by the court in sustaining the demurrer, and the order of dismissal of the court did not direct the case to be re-submitted to the same or another grand jury or a new information be filed, in whichever case it might have been, then the defendant is entitled to his discharge, and the judgment upon the indictment or information demurred to becomes final and is a bar to another prosecution for the same offense. Sec. 2952, supra; State v. Robertson, 28 Okla. Cr. 234, 230 P. 932.

"However, this court has held that the above sections of the statutes apply only to felony cases and do not apply in the case of misdemeanors. See Ex parte Dodson, 3 Okla. Cr. 514, 107 P. 450; Green v. State, 33 Okla. Cr. 268, 243 P. 533."

There has been some confusion that has arisen, partially caused by dicta in some of the opinions of this court, concerning the effect of the sustaining of a demurrer to an indictment or information and the effect of sustaining a motion to quash an indictment or information. There is a vast distinction between the two proceedings. A demurrer and a motion to quash present two different questions pertaining to an indictment or an information. The demurrer ordinarily questions the sufficiency of the information or indictment, that is, that the matters alleged do not constitute a crime, while a motion to quash an information or indictment attacks the preliminary proceedings leading up to the filing of the information or the presentation of the indictment. The statutes pertaining to motions to quash or set aside an indictment or information provide:

"If the motion be granted the court must order that the defendant, if in custody, be discharged therefrom, or if admitted to bail, that his bail be exonerated, or if he have deposited money instead of bail, that the money be refunded to him unless it direct that the case be resubmitted to the same or another grand jury." 22 O. S. 1951 § 499.

"An order to set aside an indictment or information as provided in this article is no bar to a further prosecution for the same offense." 22 O. S. 1951 § 501.

Insofar as the motion to quash is concerned, the prosecution may be instituted anew at any time before the prosecution would be barred by the statute of limitations without a direction by the court that the county attorney proceed with a new prosecution. For that reason it was unnecessary for the trial judge to enter its order nunc pro tunc to correct its previous order for the purpose of showing that the county attorney had been directed to institute a new prosecution.

The confusion that has arisen is because the statute pertaining to the disposition of a case where a demurrer has been sustained is entirely different from the statute showing the disposition of the case where a motion to quash or set aside an indictment has been sustained.

22 O. S. 1951 § 508 provides:

"If the demurrer is sustained, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that .the objection on which the demurrer is sustained may be avoided in a new indictment or information, direct the case to be resubmitted to the same or another grand jury, or that a new information be filed."

In the instant case, if the defendant had demurred to the indictment and the demurrer had been sustained and the court had failed to direct the case to be resubmitted to the same or another grand jury or that a new information be filed, the defendant must be discharged. State v. Seidenbach, 73 Okla. Cr. 254, 120 P. 2d 377; State v. Waldrep, 80 Okla. Cr. 230, 158 P. 2d 368; Davenport v. State, 20 Okla. Cr. 253, 202 P. 18.

In State v. Seidenbach et al., supra [73 Okla. Cr. 254, 120 P. 2d 379], this court held:

"Where the trial court sustains a demurrer to an information the judgment is a 'final judgment', unless the court being of opinion that the objection on which the demurrer is sustained may be avoided by a new information directs that a new information be filed, and, if the court does not direct the case to be further prosecuted the defendant, if in custody, must be discharged. 22 Okla. St. Ann. §§ 508, 509."

The record discloses that during the closing argument of the assistant county attorney the following occurred:

"I ask you, gentlemen of the jury, to examine the evidence piece by piece. This has been a long trial and I thank you for your cooperation and your patience. I ask that you go to the jury room and that you take this evidence with you. I ask that you read the instructions the Court has given you. Gentlemen, I ask that you return a fair verdict in this case. I honestly believe that Patrick, in this case, is guilty as charged. I believe that the state has proven that— * * * * * * Mr. Brown: Comes now the defendant and objects to the statement of the County Attorney, 'I believe that the defendant is guilty'. Defendant moves the Court to instruct the jury to overlook it. The Court: Overruled. Exception allowed. Mr. Brown: Exception."

It is contended that the argument was prejudicial and constituted reversible error. Citing Fitzgerald v. State, 91 Okla. Cr. 437, 219 P. 2d 1024, 1027, wherein

this court stated: "It is improper for prosecuting attorney to state his personal opinion as to defendant's guilt, or state facts not proved by evidence." There are many other cases to the same effect. Hill v. State, 76 Okla. Cr. 371, 137 P. 2d 261; Rheuark v. State, 81 Okla. Cr. 60, 160 P. 2d 413. However this court has also stated that the prosecuting attorney may state his opinion as to the defendant's guilt when he also states that his opinion is based upon the evidence in the case. Williams v. State, 4 Okla. Cr. 523, 114 P. 1114.

In all cases where alleged improper argument is set up as a basis for a new trial, this court has considered the argument in connection with the record and without exception we have held that the arguments were not improper unless they were such that they aroused the passion and prejudice of the jury to the extent that they would be swayed from arriving at a fair and just sentence, and thus deprived the defendant of his right to a fair and impartial trial, free from prejudice.

In the instant case, counsel for the defendant interrupted counsel for the state after he had stated: "I believe the state has proven that—" (i. e., The defendant is guilty as charged). It would appear from the record that the county attorney was proceeding to refer to the evidence when counsel interrupted to interpose his objection. While we do not wish this opinion to be taken as approving this statement of the county attorney, yet we think the proof of guilt is so overwhelming that it would not at all affect the verdict of the jury. The jury did not fix the punishment but merely found the defendant guilty and left the punishment to be assessed by the court. If the jury had fixed the penalty at an excessive sentence, then this statement of the county attorney could possibly be construed as prejudicial misconduct and grounds for a modification of the sentence. However, under the record before us we would not be justified in concluding that it constituted reversible error.

There is no substantial merit to any of the other matters mentioned in defendant's brief. The judgment and sentence of the district court of Oklahoma county is accordingly affirmed.

BRETT, P. J., concurs.