The **STATE** of Oklahoma, Appellant,

v.

**Walter Lee EDMONDSON, Appellee.**

**No. O-75-53.**

Court of Criminal Appeals of Oklahoma.

May 27, 1975.

As Amended on Denial of Rehearing
June 23, 1975.

Preston A. Trimble, Dist. Atty., Reginald D. Gaston, Asst. Dist. Atty., Lynn C. Rogers, Legal Intern, for appellant.

Luttrell, Pendarvis & Rawlinson, Norman, for appellee.

## OPINION

PER CURIAM:

On June 24, 1974, appellee, Walter Lee Edmondson, hereinafter referred to as defendant, was charged in the District Court, Cleveland County, Oklahoma, Case No. CRF–74–386, for the offense of Murder in the Second Degree, in violation of 21 O.S. 1974 Supp. § 701.2. Thereafter, on August 15, 1974, the State amended said Information charging the defendant with Murder in the First Degree, in violation of 21 O.S.1974 Supp., § 701.1. On September 12, 1974, a preliminary hearing was had before Examining Magistrate J. Kenneth Love, Special District Judge, Cleveland County District Court, wherein, at the conclusion of the hearing, Judge Love ordered the defendant bound over for trial for the offense of Murder in the Second Degree. The State initiated an appeal under the provisions of Rule Six of the Rules of the Oklahoma Court of Criminal Appeals, on the ground that the Magistrate erred in binding the defendant over on Murder in the Second Degree, rather than Murder in the First Degree, as charged in the Prelim-

inary Information. Thereafter, on October 15, 1974, at a combined hearing on the State's Rule Six appeal, and on the defendant's Motion to Quash, the State announced its withdrawal of the Rule Six appeal, electing to proceed under the provisions of 22 O.S.1971, §§ 815, 817, and the case of Claghorn v. Brown, Okl.Cr., 505 P.2d 998 (1973). On November 13, 1974, after having taken the matter under advisement on October 15, 1974, Honorable Elvin J. Brown, District Judge, Cleveland County, sustained the defendant's Motion to Quash the information and the court, at that time, ordered the defendant discharged unless the State gave proper notice of intent to appeal, in which event, the defendant was to be released on a personal recognizance bond pending the outcome of the appeal. On November 14, 1974, the State filed its Notice of Intent to Appeal, as provided in 22 O.S.1971, § 1053, and thus a timely appeal has been perfected to this Court.

The State's first witness at the preliminary hearing was Beth Hughes who testified that on June 23, 1974, she had occasion to see the defendant at the Norman Wholesale Greenhouse at approximately eight o'clock in the evening; that at this time she observed the defendant to have a cut left arm and when she inquired as to his injury the defendant replied that he had cut himself hanging some sashes. She further stated that she then asked the defendant if he was going to a doctor, to which he replied that he was. The defendant then turned and walked toward a white pickup. She testified that she observed the white pickup, with the defendant in it, pulling out of the parking lot of the greenhouse, at which time she noticed blood on the truck. She followed him to make sure that the defendant made it to the hospital and stated that she followed him about three-quarters of a mile past 12th Street on Rock Creek Road heading east, at which time she observed the pickup to be parked, with the driver's door open, by the side of the road. She stated that she became afraid and thus turned around and went back into town, drove past the greenhouse and went to the Norman Municipal Hospital. She further testified that after observing a white pickup and a police car parked by the emergency door, she stopped and visited with Officers Breashears, Polk, and another officer, of the Norman Police Department and related the incident to them.

David Boyett testified that he was a police officer with the Norman Police Department and was so employed on June 23, 1974, at which time he had occasion to meet the defendant at the Norman Municipal Hospital. He stated that prior to meeting the defendant at the hospital, he observed a white pickup travel through the intersection of 12th Street and Robinson at a high rate of speed and fail to stop at the stop sign. He further stated that he observed the driver of the pickup was bleeding in the area of his arm and thus called the hospital to advise that a patient was probably coming in for treatment. He further testified that he helped the defendant into the hospital emergency room, at which time the defendant showed him a knife with which the defendant said he had cut himself while chipping some wood; and the time was approximately 8:00 p. m. After being shown State's Exhibit No. 2 (a knife), he testified that it was very similar to the one the defendant had in his hand at the hospital that evening. He further testified that he had occasion to investigate a possible homicide on that evening at approximately 8:30 or 8:35 p. m. and that while doing some follow-up on some information, he went to the Norman Tropical Greenhouse where he discovered a large spot of blood on the south end of the greenhouse and many drippings of blood around the greenhouse.

Ernest Breashears testified that he was a patrolman with the Norman Police Department and was so employed on June 23, 1974, at which time he had occasion to meet the defendant at the Norman Municipal Hospital. He arrived at the hospital at

approximately 8:15 p. m. on June 23, 1974, in order to take an accidental injury report and at that time he observed a white pickup at the location. He stated that upon arriving at the Emergency Room, the defendant appeared to be semi-conscious and was being treated for lacerations to the left arm. Officer Breashears then identified State's Exhibit No. 2 as the knife he observed at the Emergency Room on that night, at which time he had taken the knife and placed it in a surgical container and properly marked it for identification purposes and thereafter turned it over to the identification expert. He further stated that the knife was covered with blood. After having been shown State's Exhibit No. 3 (the decedent Frost's billfold), he testified that he first saw the billfold in the Intensive Care Unit at which time the nurse handed him a sack of items and the billfold, allegedly the defendant's. He thereafter prepared a property custody form and inventoried all of the articles which were given him in the sack and then turned the articles over to the identification expert. He also gave the identification expert a single strand of hair found lodged in the bed of the white pickup which he had observed at the hospital.

Rachel Cauley testified that she was a ward clerk at Norman Municipal Hospital and was so employed on June 23, 1974, at which time she was on duty when the defendant came to the hospital for treatment. She stated that the defendant appeared to have injured his left arm and that when the defendant was asked by a Mrs. Alexander what had happened, the defendant replied, ". . . I've just been doing some whittling tonight." (Tr. 88) She further stated that as the defendant lay down on the examining table, he pulled out a watch and knife, both covered with blood. After being shown State's Exhibit No. 3 (the wallet of decedent Frost), she testified that it was the same wallet she had seen the defendant take out of his pocket on June 23, 1974, and that at such time the wallet was placed upon a nearby counter.

Jim Ferguson testified that he was a patrolman with the Norman Police Department and was so employed on June 23, 1974, at which time he had occasion to investigate a possible homicide. He further testified that he and Detective Housberg stopped at the Norman hospital and inspected a pickup which fit the description as a vehicle which had been seen stopped at a low area on Rock Creek Road in Norman, Oklahoma. An investigation of that area revealed the decedent's body in a bar ditch, whereupon he observed photographs being taken of the body and further observed the examination of the body by the medical examiner. He lastly testified that these events occurred at approximately 9:00 p. m.

Carol James testified that she was a registered nurse at Norman Municipal Hospital and that on June 23, 1974, she had occasion to see the defendant in the Emergency Room at which time she observed him to be covered with blood. She was then shown State's Exhibit No. 2 and No. 3, and she identified said exhibits as those of decedent Frost because she had seen the knife at the Norman Wholesale Greenhouse and the wallet was one which she had previously given to the decedent. She further stated that she was the girlfriend of the decedent. She testified that while the defendant was lying on the examining table she had occasion to have a conversation with him which included the following response by the defendant:

"A. He laid there and his eyes were shut and he said, 'kill me, kill me.' And I said, 'what,' you know, I was trying to explain to him, you know, I was trying to explain to him, you know, about, you know, he'd cut himself pretty severely and he said, 'kill me, kill me' and I said, 'Lee,' I said, 'why?'

And he said it would be better for everyone, and I still didn't—I didn't know anything about him, or about anything like with Gooch."

She further testified that the defendant owed the decedent money and also, that on

June 1, 1974, another billfold of the decedent containing some fifteen hundred dollars had disappeared the same morning that the defendant had made an early morning call on the decedent at his home and, at such time after visiting with the decedent in the bedroom, the defendant seemed in a hurry to leave.

Don Dycus testified that he was a medical doctor and was currently the County Medical Examiner and was so employed on June 23, 1974, at which time he had occasion to examine a body involved in a possible homicide located in a ditch on the south side of Rock Creek Road, at approximately 10:30 p. m. He further testified that he examined the body at the site for approximately 20 minutes, during which time he observed a number of cuts, both lateral and stab type, and that in his opinion the deceased had died from exsanguination from multiple stab and slash wounds. He stated, however, that there was not enough blood in the immediate vicinity to account for exsanguination. After being shown State's Exhibit No. 4 and No. 5 (photographs of the body taken at the scene on June 23, 1974), he testified that the photographs represented the condition of the body at that time. He further stated that subsequently an autopsy of the body was performed by a Dr. Keen and as a result of such report by Dr. Keen, his opinion of death by exsanguination was confirmed and such cause of death was listed on the death certificate. He further related that the clothing on the body of the decedent that evening included a chambray-type denim shirt, blood-soaked; trousers appearing to be brown denim, also covered with blood and dirt; brown shoes and a belt with a scabbard containing a knife.

Larry Peters testified that he was an Identification Specialist for the Norman Police Department and was so employed on June 23, 1974, at which time he had occasion to investigate a possible homicide in Cleveland County, Norman, Oklahoma.

After being shown State's Exhibit No. 6 (a photograph of the blood stains in front of the greenhouse), he testified that he took the picture at approximately 1:00 or 2:00 a. m. on June 24, 1974, and that it truly and correctly represented what he observed at that time. He also stated that State's Exhibit No. 7 (a photograph of a blood stain in the road on Rock Creek Road approximately 20 feet from where the decedent was found), was taken by him and it also truly and correctly represented what he observed at that time. After having been shown State's Exhibits No. 4 and 5 (photographs taken of the body at the scene on Rock Creek Road), he testified that he took the photographs and they truly and correctly represented what he observed at that time. He identified State's Exhibit No. 2 as the knife that was given to him by Officer Breashears on June 24, 1974, and further identified State's Exhibit No. 3 as a billfold which had been given to him along with other personal effects of the decedent and that, thereafter, all items were sealed and transported to the State Crime Lab for comparison of blood, except State's Exhibit No. 3, a wallet. He testified that the wallet had been in his possession since the time it had been given to him by Officer Breashears. He further testified that on that day Officer Breashears gave him a strand of hair taken from the pickup and such strand of hair was also transported to the State Crime Lab in Oklahoma City. At this time he identified the following State's Exhibits: State's Exhibit No. 8 (two vials of blood taken from the decedent), State's Exhibit No. 9 (a blood sample taken from the pickup, together with a piece of hair), State's Exhibit No. 10 (scalp hair taken from the decedent at the morgue at University Hospital), State's Exhibit No. 11 (a strand of hair given to him by Officer Breashears). He further testified that all items marked as said exhibits were transported to the Crime Bureau in Oklahoma City and the knife taken from the decedent's body was retained in his custody.

Ann Reed testified that she was a forensic chemist with the Oklahoma State Bureau of Investigation and had been so employed for approximately one year. Whereupon being shown State's Exhibits No. 2, No. 8, No. 9, No. 10, and No. 11, she identified the exhibits as follows: State's Exhibit No. 2 as a knife she had examined for blood stains; State's Exhibit No. 11 as a strand of hair for comparison with State's Exhibit No. 10, a sample of hair of the decedent; State's Exhibits No. 8 and No. 9 as samples of blood. The results of the blood tests were that the decedent's blood type was "O," which occurs in 45 per cent of the population, and that blood on the knife (State's Exhibit No. 2) was also type "O," although a conclusive identification could not be made. She further testified that the results showed that the single strand of hair taken from the pickup was very similar to the hair taken from the body of the decedent, but again, such hair could not be conclusively identified.

Gary Frost testified that he was a monitor of the Security National Bank in Norman and that he was the brother of the decedent, William C. Frost. He further testified that on June 23, 1974, at approximately 11:00 p. m. that evening, he had occasion to examine a body around Rock Creek Road in Norman and that at such time he determined as a result of such examination, that the body was that of his brother, William C. Frost. Whereupon being shown State's Exhibit No. 5 (a photograph of the decedent), he identified it as the body he identified that evening. He further identified State's Exhibit No. 1 as a photograph of the pickup that belonged to his brother, William C. Frost.

The State's first assignment of error asserts that the district court erred in sustaining defendant's Motion to Quash the Information. The State contends that District Court Judge Elvin Brown abused his discretion by giving such a ruling in that he failed to give deference to the findings of the Magistrate at the preliminary hearing and that he erred in determining the evidence presented at the preliminary hearing was insufficient to show the commission of any crime. The rule of law is well established, and this Court has previously held, that a Motion to Quash the Information on grounds that proof offered at the preliminary hearing is insufficient to establish a crime, is addressed to the sound discretion of the trial court. See State v. Adams, Okl.Cr., 400 P.2d 467 (1965). In evaluating whether or not Judge Brown abused his discretion in sustaining the defendant's Motion to Quash, the grounds upon which the Motion was sustained must first be examined. The ruling of Judge Brown, which was formalized in his memorandum of the court dated November 13, 1974, sets forth the grounds on which the Motion was sustained, wherein it states:

"Not only is there a total want of evidence that defendant cut or stabbed decedent, there is no evidence that anyone else stabbed decedent. The State has offered no authority for any presumption that stab wounds are to be presumed any less 'self inflicted' than assumed to have been inflicted by someone else in the commission of a robbery or in perpetuating a premeditated intent to take a life. There is a total want of evidence of any robbery or premeditated intent on the part of anyone to effect the death of decedent. The only evidence even consistent with a robbery is the billfold of the decedent in the possession of defendant. However, circumstantial evidence must be not only consistent with itself, but inconsistent with any other reasonable hypothesis. It is just as reasonable to assume that decedent gave defendant his billfold for safekeeping as it is to assume defendant stole it, so the mere unexplained possession of it is evidence of nothing except that—mere unexplained possession of it! As strong a case could be made for larceny of an automobile, or unauthorized use of it, together with the premeditated taking of human life.

"After a careful review of the evidence, and the benefit of counsel's interpretation thereof when reference can be made to page and line of the preliminary transcript, there cannot be found evidence, which if believed, would support a conviction for murder, first or second degree, or any included offense. Defendant's motion to quash the information is sustained, exceptions allowed State.

"The judgment of the magistrate refusing to hold defendant for trial for First Degree Murder is sustained, and the defendant's motion to quash the information for want of evidence showing the commission of any crime sustained, exceptions allowed State. The defendant is discharged unless the State gives timely notice of intent to appeal to the Court of Criminal Appeals, and perfects such appeal as required by law, in which event defendant is ordered released on his personal recognizance pending such appeal."

In essence, Judge Brown has ruled that the prosecution has failed to meet the prerequisites of 22 O.S.1971, §§ 262, 264, and thus commitment of the defendant for trial would be unjustified. The statute provides that evidence at a preliminary hearing must be sufficient to show that an offense has been committed and that there is reasonable cause to believe the defendant guilty of said offense. See also Kovash v. State, Okl.Cr., 519 P.2d 517 (1974). Judge Brown has thus ruled that the corpus delicti has not been proved and the appellee so urges.

 In proving the crime, which is otherwise known as the corpus delicti, two elements must be established: (1) fact of death and (2) the criminal agency of another responsible for that death. The fact of death of William C. Frost is conceded by both parties. That his death was caused, or brought about by, a criminal agency of another is a point at issue here. We fail to agree with the burden of proof Judge Brown requires the prosecution to

meet to bind the defendant over at preliminary hearing. The State is not required to present evidence sufficient to convict at trial, and there is a presumption that the State will strengthen its evidence at trial. See McAlister v. State, 97 Okl.Cr. 167, 260 P.2d 454 (1953). The State's burden is only to show that an offense has been committed and probable cause to believe the defendant committed said offense, 22 O.S.1971, § 264. And the State may meet this burden, if need be, by circumstantial evidence, such as was done by the State at the preliminary examination in this case. We, therefore, hold that the State has more than adequately met the prerequisites mandated by the statutes, and the defendant's Motion to Quash should have been overruled. The trial court's Order sustaining said Motion was error, and an abuse of discretion.

The effect of Judge Brown's sustaining the defendant's Motion to Quash may be determined by referring to this Court's language in Patrick v. State, 95 Okl.Cr. 141, 241 P.2d 418, wherein Judge Jones stated:

". . . The statutes pertaining to motions to quash or set aside an indictment or information provide:

'If the motion be granted the court must order that the defendant, if in custody, be discharged therefrom, or if admitted to bail, that his bail be exonerated, or if he have deposited money instead of bail, that the money be refunded to him unless it direct that the case be resubmitted to the same or another grand jury.' 22 O.S.1951 § 499.

'An order to set aside an indictment or information as provided in this article is no bar to a further prosecution for the same offense.' 22 O.S.1951 § 501.

"Insofar as the motion to quash is concerned, the prosecution may be instituted anew at any time before the prosecution would be barred by the statute of limitations without a direction by the court that the county attorney proceed with a new prosecution. . . ."

In result, Judge Brown has discharged the defendant and thus the effect of Judge Brown's ruling sustaining the defendant's Motion to Quash is that the case, CRF–74–386, is at an end to this defendant; however, this does not preclude the State from further prosecution of this defendant for the same offense. If the State so chooses, a new preliminary information may be filed against the defendant and subsequently, a new preliminary hearing had.

The State's second assignment of error asserts that the evidence presented at the preliminary hearing was sufficient to show the elements of Murder in the First Degree, and to justify binding the defendant over for trial on that offense. We need not reach this issue in light of the foregoing discussion of the State's first assignment of error. However, in passing, we find, after a careful examination of the record of the preliminary examination, that sufficient evidence existed to establish the corpus delicti and probable cause to bind the defendant over for the offense of Murder in the First Degree.

Our ruling today should not be construed as an expression of the defendant's guilt, or innocence, in the event criminal charges are refiled, for that is clearly the province of the jury to weigh and determine, based upon all of the evidence presented. Nor should our ruling be construed as restricting the trial court in instructing the jury if a charge for Murder in the First Degree is refiled, the defendant bound over, the trial held thereon, as to any other included offense which is properly raised by the evidence on the part of the State or the defendant, so long as the trial court complies with the provisions of 21 O.S.Supp.1974, § 701.3.

We hereby expressly overrule all cases of this Court, if any, insofar as said cases conflict with the views expressed herein.

For all of the above and foregoing reasons, the Order Sustaining Motion to Quash is reversed.